195 N.J. Super. 332 (1984)
478 A.2d 1273
GEORGE N. WYLIE AND JOAN WYLIE, PLAINTIFFS,
v.
DENNIS R. MILLS; DORIS M. FIORITO; CITY OF ELIZABETH; STATE OF NEW JERSEY DEPARTMENT OF TRANSPORTATION; NEW JERSEY TURNPIKE AUTHORITY; PORT AUTHORITY OF NEW YORK AND NEW JERSEY; DAIDONE ELECTRIC, INC.; HESS BROTHERS, INC.; CHARLES SUKENEK, HOWARD NEEDLES, TAMMEN & BERGENDOFF AND TRAFFIC LINES, INC., DEFENDANTS, AND DORIS M. FIORITO AND DENNIS R. MILLS, THIRD PARTY PLAINTIFFS,
v.
PUBLIC SERVICE ELECTRIC AND GAS COMPANY, THIRD PARTY DEFENDANT. DENNIS R. MILLS, PLAINTIFF,
v.
GEORGE N. WYLIE, PUBLIC SERVICE ELECTRIC AND GAS COMPANY, AND CITY OF ELIZABETH, DEFENDANTS. DORIS M. FIORITO, INDIVIDUALLY, DORIS M. FIORITO, AS PARENT AND NATURAL GUARDIAN OF PETER FIORITO, III, A MINOR, BERNICE T. FIORITO, INDIVIDUALLY; AND BERNICE T. FIORITO, AS PARENT AND NATURAL GUARDIAN OF FRANK FIORITO, III, A MINOR, PLAINTIFFS,
v.
GEORGE N. WYLIE; PUBLIC SERVICE ELECTRIC AND GAS COMPANY, A PUBLIC UTILITY CORPORATION OF NEW JERSEY AND DENNIS R. MILLS; CITY OF ELIZABETH, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Law Division Union County.
Decided April 19, 1984.
*334 William J. Salmond, for defendant City of Elizabeth (Morgan, Melhuish, Monaghan, Arvidson, Abrutyn & Lisowski, attorneys).
X. Paul Humbert, for defendant and third party defendant Public Service Electric and Gas Company (William S. Smith, General Claims Attorney).
Raymond A. Gill, Jr., for plaintiffs George N. Wylie and Joan Wylie (Dato, Kracht & Gill, attorneys).
Frank Cofone, Jr., for defendants Dennis R. Mills and Doris M. Fiorito (A. Herbert D'Amico, attorney).
Anne M. Zaun, for defendant State of New Jersey, Department of Transportation (Irwin J. Kimmelman, Attorney General, attorney).
Stanley R. Bright, for defendant for New Jersey Turnpike Authority (Bright & Zirulnik, attorneys).
Michael D. Driscoll, for defendant Port Authority of New York and New Jersey (Hugh H. Welsh, attorney).
Michael F. O'Neill, for defendant Daidone Electric, Inc. (Purcell, Ries, Shannon & Mulcahy, attorneys).
Jeffrey W. Moryan, for defendant Hess Brothers, Inc. (Connell, Foley & Geiser, attorneys).
Hugh Porter, for defendant Traffic Lines, Inc. (Enright, Porter, Lenney & McGrath, attorneys).
John Feniak, for plaintiff Dennis R. Mills.
Matthew T. Rinaldo, for plaintiffs Doris M. Fiorito and Bernice T. Fiorito (Rinaldo & Rinaldo attorneys).
Louis A. Ruprecht, for defendant Dennis R. Mills (McDermott, McGee & Ruprecht, attorneys).
LECHNER, J.S.C.
These consolidated cases present for consideration the issue of an asserted qualified privilege for a corporate internal evaluative *335 report. The basic issue is whether self-evaluation of corporate actions should be encouraged and protected from discovery in litigated matters, as a matter of public policy. The issue is novel in this jurisdiction in that it has not been the subject of a reported decision in New Jersey. However, several federal courts have recognized this nascent privilege.
On July 1, 1982, George Wylie, an employee of defendant Public Service Electric and Gas Company (PSE & G), was involved in an automobile accident which gave rise to this action. During depositions of PSE & G employee Mr. James McAlpine, defendant City of Elizabeth learned of the existence of several PSE & G documents. The City of Elizabeth sought production of the document entitled "Elizabeth Electric Transmission & Distribution Committee Investigation  Automobile Accident" (the "Committee Investigation Report"). PSE & G refused to produce this document and asserted various privileges. The parties agreed during a case management conference to have this court examine, in camera, the document at issue and determine the efficacy of PSE & G's asserted privileges.
The automobile accident occurred at the intersection of North and Dowd Avenues in Elizabeth, New Jersey. James McAlpine, PSE & G's Division Manager of the Elizabeth Division, Electric Transmission and Distribution Department, instituted an internal PSE & G investigation of the accident. The purpose of the investigation was to determine whether PSE & G should alter its procedures to avoid future injuries to employees. The investigation was neither pursued in anticipation of litigation, nor connected with an investigation conducted by the Claims or Legal Departments of PSE & G. The Committee Investigation Report was prepared at the conclusion of the committee investigation.
In a brief submitted to the court, PSE & G raised three objections to the requested production of the Committee Investigation Report. First, PSE & G argued that the report, prepared to further protective measures, would not be admissible *336 during trial[1] and would not lead to the discovery of admissible evidence. As such, it contends discovery pursuant to R. 4:10-2(a) must be denied. Second, PSE & G argued that the report was protected by the attorney-client privilege and the attorney work-product privilege. Third, PSE & G asserted that public policy encouraging self-critical analysis accorded the Committee Investigation Report a qualified privilege. Defendant City of Elizabeth denied that any privilege protected the requested document.
The argument that disclosure of the Committee Investigation Report may not lead to the discovery of admissible evidence is not persuasive. The report examines the accident which is the subject of the litigation. There is thus the possibility that any disclosed information may provide a link in the chain of discovery of admissible evidence. Given the preference for broad discovery, courts "should not stifle discovery by requiring a showing of the particular admissible end result that is sought." Stout v. Toner, 125 N.J. Super. 490, 491 (Law Div. 1973). Accordingly, R. 4:10-2(a) which limits the scope of permissible discovery to "... any matter, not privileged, which is relevant to the subject matter involved in the pending action ..." does not support an argument for nondisclosure of the Committee Investigation Report with regard to discovery of admissible evidence.
PSE & G's second contention that the Committee Investigation Report is protected by the attorney-client privilege and/or work-product privilege is also rejected. The attorney-client privilege extends to confidential communications between corporate employees and corporate counsel. See, e.g., Upjohn Co. v. United States, 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981); Reardon v. Marlayne, Inc., 83 N.J. 460 (1980). PSE & G has not shown any communications existed between the members of the investigation committee and corporate *337 counsel during the course of the investigation, or that these communications, if made, were intended to remain confidential. The mere fact that the Committee Investigation Report was later made a part of PSE & G's legal file is insufficient to raise the protection of the attorney-client privilege. Similarly, the work-product rule may not be invoked given the present circumstances. The Committee Investigation Report was not prepared in anticipation of litigation nor was it the result of the thought processes of counsel. Rather, the report was issued at the conclusion of a safety investigation conducted in the ordinary course of business.[2]
With regard to the third prong of the PSE & G defense to the production of the Committee Investigation Report  the nascent privilege of self-critical analysis  a more formidable and persuasive argument is advanced. The doctrine of "privileges" is dynamic in nature not static. A privilege develops when the "public need for disclosure" is outweighed by the "public need for confidentiality" of information. E.g., Hickman v. Taylor, 329 U.S. 495, 509-12, 67 S.Ct. 385, 392-394, 91 L.Ed. 451 (1947) (work-product doctrine); Upjohn v. United States, 449 U.S. 383, 389, 101 S.Ct. 677, 682, 66 L.Ed.2d 584 (1981) (attorney-client communications); Hague v. Williams, 37 N.J. 328, 336 (1962) (physician-patient communications). Even though privileges "... are not lightly created nor expansively construed ...," United States v. Nixon, 418 U.S. 683, 710, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039 (1974), there are instances when protection of the "public need for confidentiality" must be acknowledged and developed.
Several federal courts have acknowledged the existence of a qualified privilege of self-examination or self-critical analysis. *338 See, e.g., Bredice v. Doctors Hospital, Inc., 50 F.R.D. 249 (D.D.C.), aff'd on rehearing, 51 F.R.D. 187 (D.D.C. 1970), aff'd 479 F.2d 920 (D.C. Cir.1973); Banks v. Lockhead-Georgia Co., 53 F.R.D. 283 (N.D.Ga. 1971); Rosario v. New York Times Co., 84 F.R.D. 626 (S.D.N.Y. 1979). The privilege prevents disclosure of confidential critical, evaluative and/or deliberative material whenever the public interest in confidentiality outweighs an individual's need for full discovery. See, e.g., Roberts v. National Detroit Corp., 87 F.R.D. 30 (E.D.Mich. 1980); Gillman v. United States, 53 F.R.D. 316 (S.D.N.Y. 1971). Factual information, however, should not be protected by the qualified privilege. Roberts, supra; Gillman, supra. See generally Murphy, "The Self-Evaluation Privilege," 7 J. Corp. L. 489 (1982); Crisman & Matthews, "Limited Waiver of Attorney-Client Privilege And Work-Product Doctrine In Internal Corporate Investigations: An Emerging Corporate `Self-Evaluative' Privilege," 21 Am.Crim.L.Rev. 123 (1983). See, however, Note, "The Privilege Of Self-Critical Analysis," 96 Harv.L.Rev. 1083, 1093-96 (1983), which argues in favor of a qualified privilege for factual information contained in such a document.
State courts have recognized that privileges may be created in the absence of statutory authority when demanded by public policy. See, e.g., Hague v. Williams, 37 N.J. 328, 336 (1962) (in absence of statutory authority, the New Jersey Supreme Court acknowledged a qualified physician-patient privilege); Berst v. Chipman, 232 Kan. 180, 653 P.2d 107 (1982) (qualified privilege may exist independently of a specific statutory privilege). Thus, when confronted with a request to create a qualified privilege for self-evaluation, state courts have weighed the public interest in confidentiality against a litigant's interest in disclosure. Garrow v. Elizabeth General Hospital and Dispensary, 79 N.J. 549 (1979) (good faith statements concerning the qualifications of a candidate for staff appointment held qualifiedly privileged); Dade County Medical Ass'n v. Hlis, 372 So.2d 117 (Fla.App. 1979) (interest in confidentiality of ethic *339 committee records outweighs asserted grounds for discovery); Wesley Medical Center v. Clark, 234 Kan. 13, 669 P.2d 209 (1983) (interest in discovery of peer review committee records outweighs need for confidential communications); Oviatt v. Archbishop Bergan Mercy Hospital, 191 Neb. 224, 214 N.W.2d 490 (1974) (records of medical staff committee concerning defendant physician's suspension held privileged); Davison v. St. Paul Fire and Marine Insurance Co. 75 Wis.2d 190, 248 N.W.2d 433 (1977) (public interest in confidentiality of documents relating to the care of plaintiff by hospital held insufficient to prevent discovery).[3]
The information which is the subject of a production request must be the criticisms or evaluations or the product of an evaluation or critique conducted by the party opposing the production request. Additionally, the "public need for confidentiality" of such analysis must be such that the unfettered internal availability of such information should be encouraged as a matter of public policy. As a corollary to this second point, the analysis or evaluation or opinion must be of the character which would result in the termination of such self-evaluative inquiries or critical input in future situations if this information is subject to disclosure.
In short, confidentiality and the "public need for confidentiality" are the sine qua non of effective internal self-critical analysis since such confidentiality will encourage open and frank criticism. Such criticism is essential in recognizing the cause of past problems and the elimination of future problems. If the public policy of safety improvements in practice and procedure is to be encouraged, the "public need for disclosure" *340 for the individual must give way. This is especially so if such improvements are to continue and develop.
Valuable criticism can neither be sought nor obtained nor generated in the shadow of potential or even possible public disclosure. It is not realistic to expect candid expressions of opinion or suggestions as to future policy or procedures in an air of apprehension that such statements may well be used against one's colleague or employer in a subsequent litigated matter.
The purpose of an investigation intended to seek criticism, opinion or suggestion and form the basis of criticism of then existing policy or procedure is self-improvement. The value of the investigation is questionable if the input is not reliable. It is clear that the reliability of the input in this situation varies inversely with the risk of disclosure of the input or resulting criticisms.
The criteria inherent in this privilege have been satisfied in the instant case. Unless confidential safety investigations are encouraged, safety improvements in the workplace and in general will be stifled. Confidentiality should obtain even in light of an argument of exceptional need for disclosure of a document such as the Committee Investigation Report. This is so for the reasons previously expressed in this opinion. The City of Elizabeth, however, has neither asserted nor shown any exceptional need for the report. Moreover, "[A]n uncertain privilege, or one which purports to be certain but results in widely varying applications by the courts, is little better than no privilege at all." Upjohn v. United States, supra, 449 U.S. at 393, 101 S.Ct. at 684. Accordingly, public policy demands that the "evaluative" portions of the Committee Investigation Report be protected by the privilege of self-critical analysis. Nevertheless, factual information contained within the report must be disclosed.
NOTES
[1] See Evid.R. 51.
[2] Even if the report was prepared in anticipation of litigation, it would not be fully protected. Under R. 4:10-2(c), if a party shows that it has a substantial need for materials and has been unable without undue hardship to obtain the substantial equivalent by other means, the needed materials, absent mental impressions, conclusions, opinions or legal theories, should be disclosed.
[3] Davison also noted that a Wisconsin statute probably prevented judicial granting of privileges on a case-by-case basis, even if a countervailing public policy interest in confidentiality existed. There is no comparable statute in New Jersey.