## Monah v. Western Pennsylvania Hospital

*John P. Gismondi,* for plaintiff.
*Richard J. Federowicz,* for defendant.

WETTICK, *A.J.,* February 23, 1987—This is a medical malpractice action in which plaintiffs' negligence claims include the negligent monitoring of the patient following surgery in the recovery room of defendant, Western Pennsylvania Hospital. Plaintiffs have filed a motion to compel Western Pennsylvania Hospital to produce a written statement of the head nurse in the recovery room. The nurse is an eyewitness to the events in the recovery room at the time that plaintiff suffered a cardiac and respiratory arrest.

The nurse is an employee of Western Pennsylvania Hospital. Her statement was prepared prior to the commencement of the lawsuit at the request of in-house counsel for the hospital. For purposes of this motion to compel, we assume that this statement was prepared to assist counsel in evaluating the hospital's potential liability and that counsel did not reveal the contents of this statement to any third persons.

Western Pennsylvania Hospital contends that this statement is protected by the attorney-client privilege because this was a statement by an employee of the corporation to corporate counsel while both were acting in the course of their employment. Plaintiffs, on the other hand, contend that the attorney-client privilege does not extend to factual statements of an employee who is only a witness to an incident.

The law is settled that the attorney-client privilege extends to corporations. *Upjohn Co. v. United States,* 449 U.S. 383, 101 S. Ct. 677 (1981). Because a corporation is capable of communicating with its attorneys only through its agents, it is necessary to determine which communications between corporate counsel and employees or other agents of the corporation come within the scope of the attorney-client privilege.

All communications between corporate employees and corporate counsel should not be protected. For example, a corporation should not be able to assert the attorney-client privilege to protect a statement of an employee injured in the course of his employment made to corporate counsel at counsel's request in a FELA action by this employee against the corporation arising out of the incident described in the statement; or to protect statements by fellow laborers, sympathetic to the injured employee,

made to corporate counsel; or to protect statements that an employee made to corporate counsel as part of a corporate investigation to determine whether the employee had been embezzling corporate funds. In these situations, the employees making the statements have none of the attributes of a client making a statement to his or her counsel and counsel has none of the responsibilities to these employees that an attorney owes to a client.

There is no Pennsylvania appellate court case law that has considered the issue of what statements made by employees to corporate counsel are protected by the attorney-client privilege. Furthermore, the issue has not arisen frequently in other jurisdictions because most jurisdictions protect attorney work product from discovery and this protection encompasses most statements that corporate employees make to corporate counsel. However, this issue has been thoughtfully addressed by a sufficient number of appellate courts so that the different approaches available to a court have been carefully examined. The opinions in *Consolidation Coal Co. v. Bucyrus-Erie Co.*, 432 N.E. 2d 250 (Illinois Supreme Court, 1982), *Leer v. Chicago, Milwaukee, St. Paul and Pacific Railway Co.*, 308 N.W.2d 305 (Minnesota Supreme Court, 1981) cert. denied 455 U.S. 939 (1982), and *Marriott Corp. v. American Academy of Psychotherapists Inc.*, 277 S.E.2d 785 (Georgia Court of Appeals, 1981), thoroughly review the development of the case law.

Prior to 1981, most jurisdictions followed one of two tests. The first test—the control group test—was initially adopted in *City of Philadelphia v. Westinghouse Electric Corp.*, 210 F. Supp. 483 (E.D., Pa., 1962). This test extends the attorney-client privilege only to corporate employees who will be directly involved in making any decision that

may be based on the advice of counsel. The rationale for the test is that the employee, by virtue of his or her position with the corporation, will be acting as the corporation when he or she is consulting with counsel. This test focuses on the status of the employee within the corporate hierarchy.

"[I]f the employee making the communication, of whatever rank he may be, is in a position to control or even to take a substantial part in a decision about any action which the corporation may take upon the advice of the attorney, or if he is an authorized member of a body or group which has that authority, then, in effect, he is (or personifies) the corporation when he makes his disclosure to the lawyer and the privilege would apply. In all other cases the employee would be merely giving information to the lawyer to enable the latter to advise those in the corporation having the authority to act or refrain from acting on the advice." Id. at 485.

This test has been criticized because it fails to protect confidential communications that are essential in order for corporate counsel to provide legal advice. Top level executives frequently do not have the information necessary for counsel to render legal advice to the corporation. They will be reluctant to authorize counsel to obtain such information from lower level employees who have direct knowledge of the corporate operations if this information is not protected. This, in turn, will prevent corporations from utilizing counsel to learn how to obey the law according to the critics of the control group test. *Marriott Corp. v. American Academy of Psychotherapists Inc.,* supra.; *Upjohn Co. v. United States,* supra.

The second test—the subject-matter test—was initially formulated in *Harper and Row Publishers Inc. v. Decker,* 423 F.2d 487 (7th Cir., 1970); af-

by an equally divided court, 400 U.S. 348 (1971). Under this test, the communication of an employee who is not a member of the control group with corporate counsel is privileged if the employee made the communication at the direction of a supervisor and if the subject matter upon which the lawyer's advice was sought by the corporation and dealt with in the communication was within the performance of the employee's duties. This test has been criticized because it protects almost all communications between a corporate employee and corporate counsel. In response to this criticizm, the Court of Appeals for the Eighth Circuit in *Diversified Industries Inc. v. Meredith*, 572 F.2d 596 (1978) (en banc), adopted a third test—the Weinstein test—which is a refined subject matter test initially proposed by Judge/Professor Weinstein. Under the Weinstein test, the attorney-client privilege will be available to a corporation if the following requirements are met:

"(1) [T]he communication was made for the purpose of securing legal advice, (2) the employee making the communication did so at the direction of his corporate superior, (3) the superior made the request so that the corporation could secure legal advice, (4) the subject matter of the communication is within the scope of the employee's corporate duties, and (5) the communication is not disseminated beyond those persons who, because of the corporate structure, need to know its contents." Id. at 609.

In 1981, in the case of *Upjohn Co. v. United States,* supra, the United States Supreme Court rejected the use of a narrow control group test because this test fails to protect confidential communications of employees who are not members of the control group made to counsel in order for counsel to acquire the information necessary to give in-

formed advice. In this case, outside counsel was retained by the board of directors of the corporation to learn whether corporate funds had been paid to foreign governments to secure governmental business for the corporation. The ultimate purpose of counsel's investigation was to give legal advice to the board of directors. At counsel's request, the control group instructed management employees outside of the control group to provide information to counsel.

The Internal Revenue Service issued a summons for the production of this information which these corporate employees had furnished counsel. The corporation raised, inter alia, the attorney-client privilege as a basis for its refusal to provide any information furnished to corporate counsel. The court of appeals rejected the corporation's contention, holding that any information supplied by an officer or agent not responsible for directing the corporation's activities in response to legal advice which counsel furnished was outside the scope of this privilege. The United States Supreme Court reversed, stating that the narrow control group test sanctioned by the court of appeals cannot control the development of this area of the law. The court concluded that the information was protected because of the need by corporate counsel, if he or she is to adequately advise the client, to obtain relevant information from middle and lower level employees. The court did not propose a substitute test but, instead, stated that the scope of the privilege will be determined on a case-by-case basis.

While the *Upjohn* case is not binding on state courts, the case will be carefully considered by any state court that is addressing the issue of the applicability of the attorney-client privilege to communications by corporate employees to corporate counsel. The result in *Upjohn* appears to be consistent

with the goals and purposes of the attorney-client privilege. The *Upjohn* case dealt with information which counsel obtained from management employees as to corporate practices that they may have pursued on behalf of the corporation. Counsel's inquiries did not involve incidents which a corporate employee may have witnessed but, instead, dealt with policies made or followed by employees on behalf of the corporation.

This court's conclusion that the result in *Upjohn* is consistent with the attorney-client privilege as recognized by the Pennsylvania courts does not mean that the control group test should be completely abandoned. In fact, it would appear that the *Upjohn* court's dissatisfaction with the Sixth Circuit's ruling stemmed from its use of a rigid control group test that did not bring within the scope of the attorney-client privilege employees who are apparently acting as the corporation (although possibly outside the scope of any specific direction from upper management).

An important rationale for the *Upjohn* holding was that the application of the attorney-client privilege to the communications that were involved "puts the adversary in no worse position than if the communications had never taken place." 101 S. Ct. at 685. In the present case, the application of the attorney-client privilege to the communication by the head nurse to corporate counsel would place plaintiffs in a worse position that if the communication had never taken place.

This nurse is a potential witness for plaintiffs. If she would testify on behalf of plaintiffs, Western Pennsylvania Hospital would be in a position to impeach her testimony through the use of a statement that was never made available to plaintiffs. Thus, if this court were to protect this statement, we would

be creating a situation in which Western Pennsylvania Hospital could use this witness without any fear that her statement could be used to impeach her testimony while plaintiffs, if they called this nurse as a witness, would run the risk of impeachment based upon a statement that they have never seen.

The attorney-client privilege was initially developed to protect people, not corporations. If the nurse was the client of the attorney who obtained her statement, the attorney-client privilege would bar the attorney from using this statement to impeach the nurse. Thus, if this court were to protect this statement, we would be placing the corporation in a better position than if it were an individual.

While there may be situations in which the attorney-client privilege should be applied in a manner that places the corporation in a better position than an individual client, this result must be supported by strong policy considerations. These policy considerations do not exist where the communication from the employee to corporate counsel involves only the factual description of a witness to an incident that resulted in injury or death. There is no need to protect this information in order for a corporation to conduct its business affairs because the communication does not involve matters concerning confidential corporate practices. If the purpose for the communication is to assess the corporation's liability, the communication need not be protected because the same information may be obtained by plaintiff through discovery. If the purpose for the communication is to obtain evidence that will be unavailable to the plaintiff, the communication should not be protected.[1]

---

1. Other jurisdictions have created the privilege of self-critical analysis in order to encourage evaluations of past performance for the purpose of improving future operations. See

The choice of the test to be applied to communications of corporate employees to corporate counsel depends on the manner in which the court balances the competing interests of the corporation in protecting employee communications with counsel and of the litigant in obtaining full discovery of the relevant facts in order that the law's protections are extended to those persons whom the law seeks to protect. In the case of *Consolidated Coal Co. v. Bucyrus-Erie Co.*, supra (which was decided after and gave consideration to *Upjohn*), the court concluded that a broad control group test strikes the proper balance between the state's broad discovery policies which are essential to a fair disposition of the lawsuit and the needs of the corporation to obtain legal advice. Thus, the court held that a factual report of an engineer who had examined the pieces of the machine in question was not protected by the attorney-client privilege.

A similar approach was followed by the Minnesota Supreme Court in *Leer v. Chicago, Milwaukee, St. Paul and Pacific Railway Co.*, supra (which also was decided after and gave consideration to the *Upjohn* opinion). In that case, the corporate railroad

Note, The Privilege of Self-Critical Analysis, 96 Harvard Law Review 1083 (1983); *Wylie v. Mills*, 478 A.2d 1273 (New Jersey Superior Court, 1984). Since this privilege protects communications which evaluate past performance for the purpose of improving future operations, this privilege (even if it were to be recognized by the Pennsylvania courts) has no applicability to a communication made for the purpose of securing legal advice. Also if, as in the present case, critical self-analysis involves medical and hospital procedures, evaluations by other health care providers are protected from discovery by the Peer Review Protection Act (Act of July 20, 1974, P.L. 564, 63 P.S. §425.1 et seq.). See *O'Neill v. McKeesport Hospital*, No. G.D. 85-21079 (____ P.L.J. ____, 1987).

was seeking to protect statements of other members of a switching crew who had observed the accident in which plaintiff, a switchman, was injured. The court concluded that the attorney-client privilege should not extend to suppress statements of witnesses to the incident because of the state policy favoring a liberal construction of the discovery rules. The court ruled that "when an employee is merely a witness to an accident and not a party to a subsequent action, communications made with him in a general investigation do not create an attorney-client relationship." 308 N.W.2d at 309.

This court recognizes that other jurisdictions have more broadly construed the attorney-client privilege to protect the statements of employees who witnessed an accident made to corporate counsel in connection with pending or threatened litigation. See *State of Missouri ex. rel. Missouri, Highways and Transportation Commission v. Legere*, 706 S.W.2d 560 (Missouri Court of Appeals, 1986); *Macey v. Rollins Environmental Services*, 432 A.2d 960 (Superior Court of New Jersey, 1981). This court declines to follow these cases because these communications do not need to be protected in order for corporate counsel to properly prepare a defense or to give legal advice to the corporation. Futhermore, an extension of the attorney-client privilege to such communications is inconsistent with the broad discovery provisions of the Pennsylvania Rules of Civil Procedure governing discovery of trial preparation material, such as Pa.R.C.P. 4003.3 which protects from discovery only the mental impressions, conclusions, or opinions respecting the value or merit of a claim or defense or respecting strategy or tactics with respect to a representative of a party other than the party's attorney, and rule 4003.5 which does not protect the facts known or

opinions held by a regular employee of a party who may have collected the facts or rendered the opinions under the direction of counsel for a party. In jurisdictions, such as Pennsylvania, which do not protect factual information obtained in anticipation of litigation, a broad construction of the attorney-client privilege as to communications to corporate counsel from corporate employees who are witnesses to the incident would create an unfair result. The rules of discovery would permit the corporation to obtain each statement that counsel for an adverse party obtained from a corporate employee who witnessed the incident while the attorney-client privilege would protect from discovery each statement that corporate counsel obtained from the same employee.

For these reasons, the court enters the following

## ORDER

On this February 23, 1987, it is hereby ordered that plaintiffs' motion to compel is granted and that the statement of the recovery room nurse shall be produced within 20 days.