**Walter BRUNT, Plaintiff,**

v.

**HUNTERDON COUNTY,
et al., Defendants.**

**CIV.A. No. 97–3820(AET).**

United States District Court,
D. New Jersey.

Nov. 18, 1998.

---

Thomas A. Ghignone, Peter D. Hoffman, Frenchtown, NJ, for Plaintiff.

Frank N. Yurasko, Somerville, NJ, for Defendants.

Donald J. Einhorn, Gaetano M. DeSapio, Frenchtown, NJ, for the Hunterdon County Prosecutor.

## MEMORANDUM OPINION

HUGHES, United States Magistrate Judge.

This matter comes before the Court on motion of non-party movant, Hunterdon County Prosecutor ("Prosecutor"), to quash a subpoena seeking certain records [docket entry 45–1]. Defendants, Hunterdon County, the Hunterdon County Jail ("HCJ"), and the HCJ Warden, George Wagner, submitted a brief in support of the Prosecutor's motion to quash the subpoena. Plaintiff Walter Brunt opposes the motion and seeks enforcement of the subpoena. At oral argument, Plaintiff agreed to withdraw part of his request, under the subpoena, for the medical records of HCJ inmates. Additionally, Plaintiff submitted "a notice of cross-motion in opposition" to the Prosecutor's motion to quash [47–1]. The Court has reviewed the written submissions of the parties and non-party movant, and conducted oral argument on November 2, 1998.

For the reasons that follow, the Prosecutor's motion to quash Plaintiff's subpoena is granted in part and denied in part.

### I. BACKGROUND

The Complaint in this case, originally filed by inmate Plaintiff Walter Brunt on August 27, 1997 *in forma pauperis,* asserts a civil rights cause of action under 42 U.S.C. § 1983, and the Eighth and Fourteenth Amendments of the United Stated Constitution. Specifically, Plaintiff alleges that, while incarcerated in the Hunterdon County Jail ("HCJ"), Defendants were deliberately indifferent to his medical condition by failing to provide him with medication that had been prescribed to him by his own physician and

an HCJ physician to relieve or alleviate chronic back pain.

In the present motion, the Prosecutor urges that the Court quash a subpoena issued by Plaintiff in September of 1998. The subpoena requested information in the Prosecutor's possession concerning an investigation, conducted by the Prosecutor into the manner in which personnel at the HCJ handled prescription drugs. The subpoena specifically requested a copy of a report of the investigation ("Report") prepared by the Prosecutor on June 29, 1994 and "the underlying documentation." (Plaintiff's Brief at 5; *see also* Defendants' Brief, Exhibit A at 1). The requested documentation includes statements given by Dorothy Fitzpatrick, Dr. Paul Madura, Dr. Robert Coates, Deborah Macher, and other members of the medical unit and jail staff. (Prosecutor's Brief at 10 n.3).

· In an unrelated civil action filed in State Court, the plaintiff, Deborah Macher, a staff nurse at the HCJ, filed suit against both Dorothy Fitzpatrick, individually and in her official capacity as the Medical Unit Supervisor of the HCJ, and Hunterdon County. (Plaintiff's Brief, Exhibit A, ("*Macher* Complaint") at ¶¶ 1, 2). The *Macher* complaint essentially alleges that in November of 1993, the plaintiff suffered from employment discrimination because she notified then Lieutenant (now Warden) Wagner that her immediate supervisor, Ms. Fitzpatrick, was handling inmate prescription medication improperly. (*Macher* Complaint at ¶ 6). Thereafter, in March of 1994, the Prosecutor conducted an investigation of those practices. (*Id.* at ¶ 8). During the course of the investigation, the Prosecutor, pursuant to a Court-authorized subpoena, seized medications of inmates no longer at the jail, conducted interviews of the nursing staff and Dr. Paul Madura, the supervising doctor, and obtained and reviewed protocols from other institutions. (Defendants' Brief, Exhibit A at 1). In June of 1994, Hunterdon County Prosecutor Sharon Ransavage completed the investigation and produced a three page report. (*See Id.*). The Report found "no evidence of criminal wrong-doing, [but it disclosed] serious deficiencies in the administration of the medical unit that created a high potential for abuse in the dispensation of medication that were potentially dangerous." (*Id.* at 2). The Report recommended "immediate corrective action." (*Id.* at 3).

In this case, the Prosecutor did not fully comply with Plaintiff's subpoena, explaining that Plaintiff's request was overbroad, burdensome, and· sought confidential medical records of other inmates. (Plaintiff's Brief at 5). Counsel for HCJ provided a copy of the Report to counsel for Plaintiff pursuant to a confidentiality agreement. (Plaintiff's Brief at 6). Plaintiff now seeks the underlying documentation gathered during the Prosecutor's investigation of the *Macher* complaint. Specifically, Plaintiff seeks the statements made by Ms. Macher, Ms. Fitzpatrick, and Dr. Paul Madura.

In the present motion, the Prosecutor argues that office records should not be disclosed because they constitute an internal affairs investigation and, therefore, are protected under the self-critical analysis privilege. Specifically, the Prosecutor contends that the investigation was an "internal affairs investigation" because it involved another public law enforcement agency within the jurisdiction of the Prosecutor's office. The Prosecutor asserts that internal affairs investigations, by nature, require a free flow of information and must be treated as confidential. Releasing such confidential reports to the public, the Prosecutor contends, would create a chilling effect on potential witnesses in similar investigations. The Prosecutor relies on the self-critical analysis privilege. Moreover, the Prosecutor argues that the · requested information is unrelated to Plaintiff's particular claims because it concerns events that occurred eighteen months before Plaintiff was incarcerated in December of 1995. ·

Plaintiff argues that the information gathered during the investigation is not part of a confidential internal affairs investigation. Plaintiff further argues that the underlying documentation is relevant to this case even though Mr. Brunt was not incarcerated at the HCJ until eighteen months after the Report was issued because "it contains infor-

mation regarding policies and practices at the Jail which may or may not have involved medicines the plaintiff was prescribed, or similar thereto." (Plaintiff's Brief at 6). Additionally, Plaintiff argues that obtaining the information in question from Ms. Macher, Ms. Fitzpatrick, and Dr. Madura independently would be unduly burdensome for three reasons: (1) the investigation occurred over four years ago and the parties may have forgotten important details; (2) Ms. Macher is now employed by the HCJ's current medical service provider (which was not the case at the time of her prior deposition) and may be less inclined to divulge information to Plaintiff's counsel, and (3) the information in question should have been disclosed by Defense Counsel in a privilege log or the initial disclosure statement under FED.R.CIV.P. 26.

The Prosecutor and Defense Counsel argue that Plaintiff has failed to provide proofs indicating that its particularized need for the Prosecutor's records outweighs the public interest in maintaining confidentiality. Notably, however, the Prosecutor does not rely on privileges normally asserted with customary prosecutorial functions such as those identified with criminal investigations.

## II. *DISCUSSION*

The principal question presented by the Prosecutor's motion is whether Plaintiff's subpoena should be quashed because it seeks information protected by the self-critical analysis privilege. Pursuant to FED.R.CIV.P. 45(c)(3)(A)(iii), the court shall quash or modify a subpoena if it "requires disclosure of privileged or other protected matter and no exception or waiver applies ...." The Court must, thus, determine whether the underlying documentation gathered in the *Macher* investigation is protected by the self-critical analysis privilege.

### A. *Federal/State Law*

First, the Court will address whether the self-critical analysis privilege is controlled by federal or state law. Analysis of the law of privileges typically begins with Rule 501 of the Federal Rules of Evidence which provides:

Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in the rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State or political subdivision thereof shall be determined in accordance with State law.

The United States Supreme Court has cautioned federal courts to create or expand federal privileges only with extreme reluctance. *University of Pennsylvania v. E.E.O.C.*, 493 U.S. 182, 189, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990); *Herbert v. Lando*, 441 U.S. 153, 175, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979). Thus, "[p]rivileges must be strictly construed and tolerated 'only to the very limited extent that ... excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining the truth.'" *Trammel v. United States*, 445 U.S. 40, 50, 100 S.Ct. 906, 63 L.Ed.2d 186 (1974) (citation omitted).

The Prosecutor argues that State law governing privileges applies here because this is a civil action involving State law claims. The Prosecutor refers specifically to Plaintiff's claims concerning the "lack of proper medical care, negligent medical care, negligent supervision, nurse malpractice and its negligence in a vehicular accident." (Prosecutor's Brief at 4, *citing* Plaintiff's third amended complaint at ¶ 3). Thus, because state law claims are asserted, the Court should apply a balancing test approved by state courts. Alternatively, the Prosecutor argues that the Court should apply the federal common law self-critical analysis privilege because Plaintiff's case is based on § 1983 and the Eighth and Fourteenth Amendments of the United States Constitution.

■ When federal and state law claims are both presented in a single case, "the federal rule favoring admissibility, rather than any state law privilege, is the controlling rule." *Spencer Savings Bank, SLA v. Excell Mortgage Corp.,* 960 F.Supp. 835, 836 (D.N.J.1997) *quoting Wm. T. Thompson Co. v. General Nutrition Corp. Inc.,* 671 F.2d 100, 104 (3d Cir.1982). However, a federal court may "resort to state law analogies for the development of a federal common law of privileges in instances where the federal rule is unsettled." *Id.*

## B. *Self–Critical Analysis Privilege*

■ The next question before the Court is whether the Plaintiff's subpoena to quash seeks information that should be protected under the self-critical analysis privilege. The self-critical analysis privilege has its origins in *Bredice v. Doctors Hosp., Inc.,* 50 F.R.D. 249 (D.D.C.1970), *aff'd,* 479 F.2d 920 (D.C.Cir.1973). There, the court held that, absent evidence of extraordinary circumstances, a hospital has a qualified privilege to retain minutes and reports of medical staff meetings in which doctors critically analyze the hospital's medical care. *Id.* at 250–51. The purpose of the privilege is to foster self-evaluation and the benefits derived therefrom. *Id.* at 250. The court recognized that "[c]andid and conscientious evaluation of clinical practices is a *sine qua non* of adequate hospital care ...," and that "constructive professional criticism cannot occur in an atmosphere of apprehension that one doctor's suggestion will be used as a denunciation of a colleague's conduct in a malpractice suit." *Id.* The value of self-critical evaluations would be destroyed if not shielded from the discovery process. *Id.*

In *Todd v. South Jersey Hosp. Sys.,* the court noted that the purpose of the privilege included avoiding "the chilling effect upon such self-analysis which would result from complete disclosure." 152 F.R.D. 676, 682 (D.N.J.1993) (citations omitted). The court then noted that "[o]nly evaluative opinions, and not the facts disclosed in the course of self-evaluation, may be protected." *Id. citing Wei v. Bodner,* 127 F.R.D. 91, 100 (D.N.J.1989). The court reasoned that

courts have recognized a limited privilege, although there is no statutory authority for the privilege, because "frank self-criticism is important if organizations are to successfully pursue self-improvement...." *Id.* at 683 *citing Wylie v. Mills,* 195 N.J.Super. 332, 339, 478 A.2d 1273 (Law Div.1984).

Neither the United States Supreme Court, nor the Third Circuit Court of Appeals, has addressed the existence of a self-critical analysis privilege. Both of these Courts have, however, declined to recognize a privilege for peer review materials in a Title VII action, rejecting arguments regarding confidentiality of internal deliberations similar to those advanced in support of the self-critical analysis privilege. *See E.E.O.C. v. University of Pennsylvania,* 850 F.2d 969 (3d Cir.1988), *aff'd,* 493 U.S. 182, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990). Further, the most recent published decision in this District, as well as a decision by the New Jersey Supreme Court, have declined to formally adopt a "self-critical analysis privilege." *See Spencer Savings Bank,* 960 F.Supp. 835, 839 (holding that the self-critical analysis privilege should not be recognized at federal common law); *Payton v. New Jersey Turnpike. Auth.,* 148 N.J. 524, 545, 691 A.2d 321, 331 (1997) (the Court declined to adopt absolute or qualified self-critical analysis privilege, and let stand the "exquisite weighing process" courts regularly undertake in determining whether to order disclosure of sensitive documents in other contexts, and finding that the need to protect self-critical analysis would outweigh need for disclosure only in "rare circumstances"). Such opinions, although not endorsing or rejecting the privilege in the cases before them, do not foreclose the possibility that this Court could find, in certain instances, self-critical materials that may be protected from disclosure in the public interest.

Although there is a division among federal courts in this District on this issue, a number of other federal courts have recognized the privilege in some form. *See E.E.O.C. v. General Telephone Co.,* 885 F.2d 575, 578 (9th Cir.1989) (recognizing qualified privilege; waived by employer who offered evidence of its affirmative action efforts to prove nondis-

crimination); *Coates v. Johnson & Johnson,* 756 F.2d 524, 551–52 (7th Cir.1985) (same); *Reichhold Chemicals, Inc. v. Textron, Inc.,* 157 F.R.D. 522, 524 (N.D.Fla.1994) (recognizing privilege to protect only subjective impressions and evaluations, not objective facts); *Culinary Foods, Inc. v. Raychem Corp.,* 151 F.R.D. 297, 304 (N.D.Ill.1993) (refusing to apply the privilege abstractly); *In Re LTV Securities Litigation,* 89 F.R.D. 595, 619 (N.D.Tex.1981) (recognizing corporate self-investigative privilege for special officers of special counsel investigating activities of publicly held corporations).

Previously, courts in New Jersey have recognized the existence of the self-critical analysis privilege but have declined to enforce the privilege. *See e.g., Todd, supra. See also Harding v. Dana Transport, Inc.,* 914 F.Supp. 1084 (D.N.J.1996) (self-critical analysis privilege is "essential to the free flow of information and . . . the free flow of information is essential to promote recognized public interests") *citing Note, The Privilege of Self Critical Analysis,* 96 Harv. L. Rev. 1083, 1087 (1983). Although recognizing the existence of the privilege, these courts have declined to apply it in specific cases. *Harding,* 914 F.Supp. at 1100–01 (D.N.J.1996) (declining to find internal investigation of Title VII complaint protected by privilege); *Todd,* 152 F.R.D. at 682–84 (finding that plaintiff's need for the information sought was compelling enough to overcome the self-critical analysis privilege as to peer review committee material); *Wei,* 127 F.R.D. at 100–01 (rejecting claim of self-critical analysis privilege as to internal materials discussing hospital's performance).

In *Payton,* the Supreme Court of New Jersey recently "decline[d] to adopt the privilege of self-critical analysis as a full privilege, either qualified or absolute, and disavow[ed] the statements in those lower court decisions that have accorded materials covered by the supposed privilege near absolute protection from disclosure." *Payton,* 148 N.J. at 545, 691 A.2d 321. Instead, the court determined that "concerns arising from the disclosure of evaluative and deliberative materials [are] amply accommodated by the 'exquisite weighing process'" courts regularly undertake in determining whether to order disclosure of sensitive documents in other contexts. *Id. citing Loigman v. Kimmelman,* 102 N.J. 98, 108, 505 A.2d 958 (1986). Accordingly, the Court held that "case-by-case balancing is more appropriate in accommodating self-critical analysis than is a per se privilege." *Id.* at 547–48, 691 A.2d 321.

Since federal law in this District on the existence of the self-critical analysis privilege is unsettled, the Court should resort to state law analogies for guidance on the appropriate law to be applied in this case. Because the United Stated Supreme Court has cautioned federal courts against expanding federal privileges, and considering New Jersey law as provided in the *Payton* decision, this Court finds that, rather than adopting a "full-fledged privilege", a case-by-case balancing approach is sufficient to address self critical analysis concerns.

Accordingly, the Court must balance the interest of the Prosecutor in maintaining the confidentiality of its files against the interest of Plaintiff in accessing relevant information which he cannot be reasonably expected to discover elsewhere.

### C. *Balancing Need and Confidentiality*

In determining whether the self-critical analysis privilege is applicable, the New Jersey Supreme Court requires the party seeking to invoke the privilege to show:

[a] particularized need that outweighs the public interest in confidentiality of the investigative proceedings, taking into account (1) the extent to which the information may be available from other sources, (2) the degree of harm that the litigant will suffer from its unavailability, and (3) the possible prejudice to the agency's investigation.

*McClain v. College Hosp.,* 99 N.J. 346, 351, 492 A.2d 991 (1985). Federal courts that recognize a federal self-critical analysis privilege generally require three different criteria to be met: (1) the information must result from a critical self-analysis undertaken by the party seeking protection; (2) the public must have a strong interest in preserving the free flow of the type of information sought; and (3) the information must be the type

whose flow would be curtailed if discovery were allowed. *Torres v. Kuzniasz*, 936 F.Supp. 1201, 1214–15 (D.N.J.1996). Ten additional factors were listed in *Frankenhauser v. Rizzo*, 59 F.R.D. 339, 344 (E.D.Pa.1973). In *Frankenhauser*, in an analysis similar to that in *McClain*, the court essentially balanced the public interest in the confidentiality of governmental information-concerning a police investigation into the deaths of a father and son shot by police officers-against the need of the litigants to obtain data, not otherwise available.

### 1. *Alternate Source / Prejudice to the Plaintiff.*

██  The Court will address the first two *McClain* factors together: the extent to which the information may be available from other sources and the degree of harm that the litigant will suffer from its unavailability. The Prosecutor argues that Plaintiff's subpoena should be quashed because Plaintiff has access to the information it seeks through alternative discovery practices. At first blush, the Prosecutor's argument has merit. However, the Court finds that Plaintiff would be unduly burdened if he had to obtain the information through independent means.

First, Ms. Macher has recently become employed by the medical service provider at the HCJ. She was not an employee of the HCJ medical provider at the time of the 1994 investigation. Rather, she was pursuing a cause of action against Hunterdon County and Ms. Fitzpatrick, individually and in her official capacity as the Medical Unit Supervisor of the HCJ. Her prior statements may have been more informative than her testimony would be in a deposition conducted by Plaintiff for two reasons. First, now that Ms. Macher has begun employment with the current medical provider of HCJ, she is no longer in an adversarial situation where she is pursuing a cause of action against her former employer. Rather, she would be testifying against an entity that hired her employer. Thus, her testimony could be at odds with her employment interests. While Ms. Macher filed an employment discrimination suit against her former employer, the Court does not find that Ms. Macher should

have to provide testimony that may create tension with her present employer. This result seems particularly appropriate because her statement taken four years ago was taken when the events in question were fresh in her mind and presumably more accurate than they would be at this time. Second, the investigation occurred over four years ago, and memories undeniably fade as time passes. Thus, prior statements taken over four years ago may be more valuable to Plaintiff than taking depositions at this time.

Finally, Plaintiff is a prisoner, obviously with limited means to conduct unnecessarily expensive discovery, who should not be forced to spend time and money through additional depositions when the same information is reasonably accessible through production of a file. *See* FED.R.CIV.P. 1 (These rules "shall be construed and administered to secure the just, speedy, and inexpensive determination of every action.").

### 2. *Discoverability.*

The Prosecutor argues that the documents underlying the Report are irrelevant to Plaintiff's cause of action because his incarceration at the HCJ occurred eighteen months after the Report was completed. Federal Rule of Civil Procedure 26(b)(1) provides that:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action,.... The information sought need not be admissible at the trial if the information appears to be reasonably calculated to lead to the discovery of admissible evidence.

Here, Plaintiff's claim alleges deliberate indifference to his medical needs. Plaintiff seeks information suggesting that Defendants have a history, or engaged in a pattern of a deliberate indifference to carefully providing prescription drugs to inmates, and particularly to the Plaintiff. The information sought by Plaintiff concerns an investigation focusing on the "questionable and potentially dangerous practices involving the dispensing of prescription medicines." (The Report at 1). Therefore, the information sought may be admissible or, at the very least, it may

lead to admissible information despite the eighteen-month gap.

### 3. Confidentiality / Prejudice to the Prosecutor

The Prosecutor also argues that the public has a strong interest in protecting the confidentiality of internal affairs investigations and that revealing information gathered during internal affairs investigations would result in a chilling effect that would discourage people from participating in such investigations. The Prosecutor relies, in part, on *Wylie v. Mills*, 195 N.J.Super. 332, 339–40, 478 A.2d 1273 (Law Div.1984) (holding that public policy demanded that evaluative portions of a corporate report be protected by the self-critical analysis privilege). However, in *Payton,* the New Jersey Supreme Court sharply criticized the *Wylie* court's analysis: "We are not as confident as the court in *Wylie* that absolute confidentiality is always essential to encourage frank, productive self-evaluation. It is not so clear that disclosure inevitably will discourage candid self-criticism." *Payton,* 148 N.J. at 546–47, 691 A.2d 321. Thus, it seems clear that disclosing confidential information, which even concerns evaluative and deliberative materials, would not necessarily discourage self-criticism. *See Id. citing Tharp v. Sivyer Steel Corp.,* 149 F.R.D. 177 (S.D.Iowa 1993). In *Tharp,* the court noted that in an employment context, "[p]ermitting disclosure of an employer's self-critical analyses of its equal employment efforts may actually cause employers to engage in a more honest assessment of its efforts because flaws in those analyses may be brought to light in civil litigation." *Tharp,* 149 F.R.D. at 183 n. 13 *cited with approval in Payton, supra.*

The Court finds that this is not the type of case that would produce the type of chilling effect that concerns the Prosecutor. Plaintiff merely seeks statements made by various employees of the HCJ and its medical staff in early 1994. Such statements are presumably factual. Judging by the facts contained in the Report and its conclusion that the investigation did not reveal criminal activity, the court finds that the Prosecutor does not have an interest in maintaining the confidentiality of the information in question that is sufficiently compelling to outweigh Plaintiff's interest in gathering discoverable information. Indeed, awareness that the Prosecutor keeps a watch on medical care at county jails can only benefit the public good.

Finally, the Prosecutor contends that the information underlying the Report is confidential because it is part of an internal affairs investigation. In support of its contention, the Prosecutor relies on *Korostynski v. Gaming Enforcement,* 266 N.J.Super. 549, 557–59, 630 A.2d 342 (App.Div.1993) (holding that internal investigation records of other Division of Gaming employees were within the self-critical analysis privilege). Even though the *Korostynski* court found that internal investigation records were privileged, the court applied a balancing test in its analysis. 266 N.J.Super. at 557, 630 A.2d 342. The court reasoned that "the public's interest in confidentiality significantly outweigh[ed] plaintiff's need for full discovery and the requested material." *Id.* The court also applied the *McClain* factors in determining whether the confidential information should be disclosed. *See McClain,* 99 N.J. at 351, 492 A.2d 991. Nevertheless, the Prosecutor's reliance on *Korostynski* is, in light of the *Payton* decision, unpersuasive.

The *Payton* court specifically overruled *Korostynski* and several lower courts in New Jersey that "adopted the privilege and granted seemingly absolute protection to evaluative and deliberative portions of organizations' files." *Payton,* 148 N.J. at 544–45, 691 A.2d 321 *citing Korostynski, supra.* As noted above, the *Payton* Court declined to adopt the privilege of self-critical analysis as a full privilege, but the Court also "disavow[ed] the statements in those lower court decisions that have accorded materials covered by the supposed privilege near-absolute protection from disclosure." *Id.* at 545, 691 A.2d 321.

In further support of its motion, the Prosecutor submitted the certification of Nicholas Susalis, Jr., the Chief of Prosecutor's Detectives. (Prosecutor's Exhibit A, Certification of Nicholas Susalis, Jr. at ¶ 1). Chief Susalis stated that the investigation in question was an internal affairs investigation and that release of the internal affairs investigation files

"is contrary to the public's interest and contrary to the policy of the office." (*I*, 691 A.2d 321). Chief Susalis further stated that releasing the contents of internal affairs investigations would discourage witness participation, thereby hampering such investigations in the future. Although Chief Susalis refers to legitimate policy concerns, they do not outweigh Plaintiff's interest in obtaining the requested information in this particular case. The Report has already been disclosed to Plaintiff, and the Report was based on the very underlying information sought by Plaintiff. Because a summary and the conclusions of the investigation have already been partially disclosed, via the Report, the Court finds that revealing the facts underlying the Report will not substantially prejudice the Prosecutor's ability to conduct internal affairs investigations in the future.

The Prosecutor's office also compares this case to cases involving law enforcement and grand jury investigations. However, the Court finds that such cases are inapplicable here, where the Prosecutor relies solely on assertion of the self-critical analysis privilege.

However, the Court, of course, acknowledges the importance of the confidentiality of evaluative and deliberative materials in the Prosecutor's work. Therefore, the Court finds that Plaintiff is entitled to only factual information underlying the Prosecutor's Report and not reference to opinion, conclusion, mental impression, or evaluations contained in the Prosecutor's file. Considering that Plaintiff already possesses the Report itself, the production of such underlying factual information should not reasonably be expected to unduly prejudice the Prosecutor's interest in promoting future citizen cooperation. Moreover, such a course of action will streamline discovery, save time and money for counsel and litigants, and promote judicial economy by allowing this matter to proceed in a fair and expeditious manner.

### III. *CONCLUSION*

For the reasons stated, the Court will grant, in part, and deny, in part, the Prosecutor's motion to quash Plaintiff's subpoena by allowing disclosure of only factual information contained within the subject file.

The Court has been careful to distinguish this case from those involving grand jury materials, similar ongoing criminal investigations, and specific cases where there has been a sufficient showing that disclosure will damage personal reputations or chill the free flow of information. The Court believes that "[d]emocracy needs to be as open as it can be" [1] and in this particular case there appears to be no greater justification for continued non-disclosure.

An appropriate Order accompanies this Memorandum Opinion.

---

**1.** James Dao, *Moynihan Reflects on Career as Scholarly, Puckish Power*, N.Y. Times, November 15, 1998 at B 37, B 41 *quoting* United States

Senator Daniel Patrick Moynihan, discussing a bill to declassify certain government documents.