215 N.J. Super. 333 (1987)
521 A.2d 1315
RUTH F. DIXON, RESPONDENT,
v.
RUTGERS, THE STATE UNIVERSITY OF NEW JERSEY; EDWARD J. BLOUSTEIN, PRESIDENT; RUSSELL J. FAIRBANKS, PROVOST; WALTER J. GORDON, DEAN, APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued September 22, 1986.
Decided February 24, 1987.
*334 Before Judges PETRELLA, GAYNOR and SCALERA.
Aron M. Schwartz argued the cause for appellant (Vogel, Chait, Kimmel, Schwartz & Collins, Aron M. Schwartz on the brief).
Nancy Kaplen Miller, Deputy Attorney General, argued the cause for respondent (W. Cary Edwards, Attorney General of New Jersey, attorney, Andrea Silkowitz, Deputy Attorney General, of counsel; Nancy Kaplen Miller on the brief).
The opinion of the court was delivered by GAYNOR, J.A.D.
This interlocutory appeal presents the novel question of whether an academic freedom privilege should be formulated to protect the confidentiality of material contained in promotion packets of members of the faculty of Rutgers, The State University.
By leave granted, Rutgers appeals from the denial of its motion to preclude the use of such material in an administrative proceeding wherein the Division of Civil Rights (DCR) found that probable cause existed for the claim that a faculty member had been denied a promotion from assistant professor to associate professor because of sex discrimination.[1] In permitting the evidentiary use of this confidential material, under appropriate protective restrictions, the Administrative Law Judge rejected the asserted privilege and also concluded that such use was not precluded by the terms of a collective bargaining agreement as *335 incorporated in complainant's employment contract. We agree and affirm.
Dr. Ruth Dixon (Dixon), a black female, was hired by Rutgers in 1971 as an assistant professor and chair of the Educational Opportunity Fund Instructional Department at the Camden campus of the College of Arts and Sciences. After the completion of her fifth year of employment, Dixon was notified that she would automatically be evaluated for tenure and promotion to associate professor during the 1976-1977 academic year. If tenure were not granted, she would receive a one-year terminal contract as a lecturer. Pursuant to university procedures, Dixon was evaluated by the Ad Hoc Committee, the Appointment and Promotions Committee and the Dean of the college and was unanimously recommended for tenure and promotion. Her promotion packet was then forwarded to the Promotion Review Committee (PRC). This committee, appointed by the university president, reviews all evidence previously considered in connection with a proposed promotion and granting of tenure, including the confidential letters of recommendation from sources outside the university, and then submits its recommendations to the president. The PRC declined to recommend Dixon for promotion and tenure because of "insufficient evidence of distinction in teaching, creativity and research." When reminded that Dixon had no teaching responsibilities by which distinction could be evidenced, the committee reconsidered her application for promotion and concluded that she showed "insufficient evidence of research and scholarly activities expected of a faculty member in Academic Foundations" to warrant a recommendation for promotion and tenure.
The day before Dixon's review by the PRC, the committee considered the promotion packets of Henry Eng (Eng) and William Jones (Jones), faculty members in Academic Foundation Departments on two other campuses. Eng, an assistant professor at Livingston, was recommended for tenure and Jones, an assistant professor at Newark, was recommended for tenure and promotion. The recommendations of the PRC concerning *336 Dixon, Eng and Jones were thereafter adopted by the Rutgers' Board of Governors.
Dixon's rejection for promotion and tenure prompted her to file a complaint with the DCR claiming discrimination based on her race and sex. Following an investigation, which included an examination of the promotion packets of Dixon, Eng and Jones under a protective stipulation, the DCR found probable cause to credit the allegations of sex discrimination in the decision denying tenure and promotion to Dixon. However, noting that Eng was an oriental and Jones was a black, it found no support for the claim of racial discrimination. Prior to the issuance of these findings, Dixon had been awarded retroactive tenure by the Board of Governors.[2] The matter was then transmitted to the Office of Administrative Law for prosecution by the attorney general.
In denying Rutgers' prehearing motion to preclude the admission of the promotion packets, the ALJ concluded that neither the stipulation between counsel when the files were turned over to the DCR nor the terms of a collectively negotiated agreement between Rutgers and the Rutgers Council of the American Association of University Professors precluded the admissibility of the subject files. Further, that the confidentiality ascribed to the contents of the packets did not require their exclusion as evidence, particularly in view of their availability to Rutgers to demonstrate the claimed nondiscriminating reason for rejecting Dixon's application for promotion. The admission of the material also was deemed necessary because of its relevancy to a prima facie showing of unlawful discrimination and the unavailability from other sources of evidence of qualifications considered by the committee. However, the expected confidentiality of letters from outside sources were to be protected by the excision of the authors' names from the documents *337 "so long as Rutgers did not place greater weight on one outside specialist over another because of reputation in the academic community."
In this appeal, Rutgers contends the materials are privileged against disclosure since a compelling public interest in maintaining their confidentiality heavily outweighs the asserted need for their use. It is urged that a qualified academic freedom privilege should be invoked to preclude the evidentiary use of the confidential material, as such protection would support the peer review system for faculty promotion and tenure, the reliability and integrity of which assertedly is dependent upon the confidentiality of both internal and external evaluations. Rutgers further contends that the minimal relevancy of these documents to the proceedings should not take precedence over the privilege they should enjoy. Additionally, the substantial deference required to be given to the academic judgments involved in promotion and tenure decisions assertedly should negate the claimed need for their admission. Finally, Rutgers argues that, in addition to being privileged, the confidential material is protected from disclosure by the express terms of the collectively negotiated agreement between the university and the American Association of University Professors as incorporated in Dixon's individual employment contract.
Consideration of the creation of a new privilege must begin with the premise that "all privileges ... are exceptional, and are therefor to be [discouraged].... The investigation of truth and the enforcement of testimonial duty demand the restriction, not the expansion, of these privileges." 8 Wigmore, Evidence, (McNaughton rev. ed. 1961) § 2192 at 70-73. See e.g., Fellerman v. Bradley, 99 N.J. 493, 502 (1985); State v. White, 195 N.J. Super. 457, 460 (Law Div. 1984); Cf. Wylie v. Mills, 195 N.J. Super. 332, 337 (Law Div. 1984). As privileges do not further the ascertainment of truth but rather permit the concealment of relevant, reliable information, courts have been reluctant to expand or create new privileges in the absence of *338 compelling reasons. In re Dinnan, 661 F.2d 426, 429-430 (5 Cir.1981), cert. den. 457 U.S. 1106, 102 S.Ct. 2904, 73 L.Ed.2d 1314 (1982). In addressing the issue of the judicial establishment of new privileges, the United States Supreme Court has stated that "exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth." United States v. Nixon, 418 U.S. 683, 710, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974). See also, State v. White, 195 N.J. Super. at 460. The exclusion of relevant evidence by the creation of a privilege is warranted only if the resulting public good transcends the normally predominant principle of utilizing all rational means for ascertaining truth. Trammel v. United States, 445 U.S. 40, 49, 100 S.Ct. 906, 912, 63 L.Ed.2d 186 (1980). While the authority of this court would encompass the formulation of a new privilege, see Hague v. Williams, 37 N.J. 328, 335 (1962), we are aware of the hostility on the part of the judiciary, in general, to recognize additional privileges. In re Dinnan, 661 F.2d at 430.
With these concepts in mind, we turn to the academic freedom privilege sought to be invoked by Rutgers. We are urged to establish this evidentiary privilege because, without confidentiality, the reliability and integrity of the peer review system used for faculty promotion and tenure assertedly would be seriously and substantially impaired, thereby undermining the excellence of the faculty and the consequent excellence of the university. It is argued that the attainment of such professorial quality is a societal value which transcends the search for the truth concerning the committee's action on Dixon's application for promotion.
There can be no question as to the worthiness of Rutgers' being staffed by an excellent faculty. Nor that, normally, the pursuit of such excellence should be furthered by a system which controls the advancement of the faculty by means of confidential internal and external peer evaluations. See Snitow v. Rutgers University, 103 N.J. 116, 122 (1986). Also, we do *339 not quarrel with the observation that confidentiality has been recognized by the courts as playing an important role in appropriate circumstances. See e.g. Nero v. Hyland, 76 N.J. 213, 224 (1978); Wylie v. Mills, 195 N.J. Super. at 337; State v. Kaszubinski, 177 N.J. Super. 136, 138-139 (Law Div. 1980).
But, we do not agree that the public interest which is served by the confidentiality of the promotion packets of the faculty of Rutgers outweighs the competing interest of disclosure of discriminatory treatment. The eradication of unlawful discrimination from our society has always been of predominant concern in our State. Peper v. Princeton Univ. Bd. of Trustees, 77 N.J. 55, 80 (1978). Our aversion to such disparate treatment in an employment setting was noted by the observation in Peper that "[e]mployment discrimination due to sex or any other invidious classification is peculiarly repugnant in a society which prides itself on judging each individual by his or her merits." Id. at 80. The Legislature likewise has recognized discrimination as a public injury. See David v. Vesta Co., 45 N.J. 301 (1965); N.J.S.A. 10:5-3. Cloaking the peer review process with an evidentiary privilege of nondisclosure, in the face of a charge of a discriminatory practice, would be repugnant to the public policy against discrimination as well as contrary to the public interest in providing a remedy for this type of injury. Unchecked discrimination in a university environment presents no less a public injury than such conduct in other settings. Constitutional as well as statutory rights are implicated. See Peper, 77 N.J. at 81.
Moreover, invoking the suggested privilege would severly interfere with the search for truth in denying access to relevant evidence. One of the most important sources of evidence in demonstrating discrimination is comparative materials. Id. at 84-85. See also O'Connor v. Peru State College, 781 F.2d 632, 636 (8 Cir.1986); E.E.O.C. v. Franklin and Marshall College, 775 F.2d 110, 117 (3 Cir.1985), cert. den. ___ U.S. ___, 106 S.Ct. 2288, 90 L.Ed.2d 729 (1986). While comparisons may be more difficult in the case of academic employment decisions, such *340 evidence seemingly would be essential to a determination as to whether disparate treatment was rendered. See Namenwirth v. Board of Regents, 769 F.2d 1235, 1241 (7 Cir.1985), cert. den. ___ U.S. ___, 106 S.Ct. 807, 88 L.Ed.2d 782 (1986). It is evident that a full disclosure of the relative qualifications of Eng, Jones and Dixon and the peer review materials as contained in their promotion packets is necessary to the factual inquiry of whether discrimination had been a factor in Dixon's promotion rejection. See E.E.O.C. v. Franklin and Marshall College, 775 F.2d at 116. To preclude the evidentiary use of this material would require Dixon to chase an invisible quarry. It would also effectively deny her the opportunity to demonstrate employment discrimination as evidence of qualifications considered by PRC is not available from other sources. We perceive no merit in Rutgers' contention that differences in job responsibilities and disciplines between these three academicians vitiate the relevancy of the comparison.
Furthermore, we are not convinced that the disclosure in these proceedings of the contents of the promotion packets would impair the integrity of the peer review system in acting upon faculty promotions and tenure. As the individuals being evaluated can have access to their own packet, except for the outside letters of evaluation, the peer reviewers are not operating under an assumption of strict confidentiality. It is unlikely that an evaluator, knowing that the person being evaluated will have access to the records and that the evaluation may be discoverable in a Title VII federal proceeding,[3] would feel any less "chilled" knowing that the materials may be admissible in an action instituted by the DCR. Even if such an individual does exist "[t]he chance that now and then there may be found some timid soul who will take counsel of his fears and give way to their repressive power is too remote and shadowy to shape the course of justice." Clark v. United States, 289 U.S. 1, 16, *341 53 S.Ct. 465, 470, 77 L.Ed. 993 (1933). For those who occupy "positions of responsibility ... the consequence of such responsibility is that occassionally the decision maker will be called upon to explain his actions. In such a case, he must have the courage to stand up and publicly account for his decision." In re Dinnan, 661 F.2d at 432. Given the strong public interest in disclosure of all relevant evidence, the marginal impact, if any, of the evidentiary use of the peer review process material is outweighed by the demands of fair employment. See Gray v. Board of Higher Educ., 692 F.2d 901, 908 (2 Cir.1982). Moreover, such disclosure is always subject to appropriate protective measures,
The attempt to ground the asserted privilege in the concerns of academic freedom is also unpersuasive. While academic freedom should allow a university "to determine for itself on academic grounds who may teach, what may be taught, how it shall be taught, and who may be admitted to study," [Citation omitted.] Regents of the University of California v. Bakke, 438 U.S. 265, 312, 98 S.Ct. 2733, 2759, 57 L.Ed.2d 750 (1978), and "no decision can more fully implicate an institution's academic responsibility than the decision to hire, or promote, and retain faculty," Snitow v. Rutgers University, 103 N.J. at 123, a claim of discrimination relates to a decision made on other than academic grounds. Academic freedom does not encompass disparate treatment in acting upon faculty promotions or the shielding of records which might reveal evidence of discrimination. To so extend the concept "would give any institution of higher learning a carte blanche to practice discrimination of all types." In re Dinnan, 661 F.2d at 431.
The further contention that the evidentiary use of the packets is precluded by the provision in the collective bargaining agreement between Rutgers and the AAUP restricting access to personal files to the named individuals, except for use by the university for evaluation purposes, is devoid of merit. Even if this provision were deemed applicable, the material is not being sought by Dixon, but by the DCR which is not a party to the *342 agreement. In any event, judicial considerations of the proper scope of compelled disclosure in a discrimination proceeding are not constrained by a collective bargaining agreement. Gray v. Board of Higher Educ. 692 F.2d at 910.
Rutgers' argument that nondisclosure of the peer review materials is mandated by the proscription contained in Evid. R. 34 against disclosing official information of the State is clearly without merit. R. 2:11-3(e)(1)(E).
In affirming the denial of Rutgers' motion to preclude the evidentiary use of the contents of the particular promotion packets, we also approve of the protective measure imposed by the Administrative Law Judge. However, we extend that provision to include a prohibition against the disclosure of the material to persons not involved in the proceedings.
Affirmed as modified.
NOTES
[1] The reference to Rutgers as the appellant is intended to include the individual appellants who are administrative and academic officers of the university.
[2] The record before us does not contain any explanation for this reversal by the Board of Governors.
[3] See E.E.O.C. v. Franklin and Marshall College, supra; In re Dinnan, supra.