217 N.J. Super. 226 (1987)
525 A.2d 337
IN THE MATTER OF GAIL D.
Superior Court of New Jersey, Appellate Division.
Argued March 25, 1987.
Decided April 16, 1987.
*227 Before Judges FURMAN, DREIER and STERN.
Herbert I. Waldman argued the cause for appellants P.D. and D.D. (Furst & Waldman, attorneys; Herbert I. Waldman, on the brief).
John J. O'Reilly, Assistant Prosecutor argued the cause for respondent (Lee S. Trumbull, Morris County Prosecutor; Joseph Connor, Jr. Assistant Prosecutor, on the brief).
The opinion of the court was delivered by DREIER, J.A.D.
Two minors, P.D. and D.D., and their paternal grandfather, Adolph D., appeal by leave granted from the denial of their motions to quash subpoenas requiring them to testify before a Morris County Grand Jury. The Grand Jury was investigating the death of the children's mother, Gail D., the target of the investigation being their father, John D.
After their mother's death, the boys, then unaware that their father was or might become a suspect, were interviewed by the police. Although they gave their statements in the presence of their attorney, they were also unaware that they might have the right to refuse to answer questions under an alleged parent-child privilege. Adolph D. is 84 years old and lives on the same street as his son's family. He is the president and his son is the vice president of a family business; they enjoy a very close relationship. The State contends that the testimony of the two boys and their grandfather are necessary to describe the actions of John D. before and after his wife's death, including his reporting of the incident, and to disclose discussions *228 they may have had with John D. prior to or after the homicide. There are no allegations that either the boys or Adolph D. were witnesses to the murder[1].
The sole issue presented on this appeal is whether the trial judge correctly declined to apply a parent-child privilege, the only basis offered by the witnesses to support their refusal to testify before the grand jury. There are sub-issues which relate to the nature of the claimed privilege and the propriety of a declaration of a parent-child privilege by the judiciary.
There is no need in this case for us to restate fully the arguments for and against a parent-child privilege. A brief synopsis will suffice. A common-law privilege has been judicially recognized in but two jurisdictions, in Nevada by the Federal District Court in In re Agosto, 553 F. Supp. 1298 (D.Nev. 1983) (based upon a constitutional right of family privacy), and in New York, In re A. and M., 403 N.Y.S.2d 375 (App.Div. 1978), and People v. Fitzgerald, 101 Misc.2d 712, 422 N.Y.S.2d 309 (Cty Ct. 1979) (limited to confidential communications). At least two jurisdictions have enacted some form of a parent-child privilege by statute. See Idaho Code § 9-203(7) (Supp. 1984) and Minn. Stat. § 595-02(9) (1982).
Against these authorities stands the majority of jurisdictions declining to recognize a parent-child privilege by case law. See United States v. Davies, 768 F.2d 893, 899 (7th Cir.1985), cert. den. ___ U.S. ___, 106 S.Ct. 533, 88 L.Ed.2d 464 (1985), (collecting federal authorities), and Three Juveniles v. Commonwealth, 390 Mass. 357, 455 N.E.2d 1203, 1206 n. 4, cert. den. 465 U.S. 1068, 104 S.Ct. 1421, 79 L.Ed.2d 746 (1984) (collecting some additional state authority). Indeed, the volume *229 of law review commentary greatly exceeds that of the cases either declaring or refusing to recognize the privilege[2].
In some cases the absence of a parent-child testimonial privilege assertable by the witness has led to anomalous and apparently unjust results. For example, in State v. Delong, 456 A.2d 877 (Me. 1983), the victim of an alleged incestuous attack refused to testify against her father and was sentenced to the county jail for contempt. The dissenting justice noted:
I find it anomalous indeed that in this case alleged sexual misconduct it is the young victim of that misconduct who now goes off to county jail. [Id. at 886].
Yet even if a privilege as broad as the marital privilege were to be adopted, the exceptions for intra-family crimes contained in the testimonial disqualification of Evid.R. 23(2) and the communication privilege of Evid.R. 28, might well bar the privileges claimed by the children. In any event, since they were not ordered to disclose any confidential communications, the children would be protected only by a complete testimonial bar. As to Adolph D., however, the State has sought disclosure of confidential communications, and if a privilege akin to the marital privilege were recognized, the courts would be required to examine those exceptions which might encompass his claim. *230 But, in view of our conclusions concerning the authority of our court in matters such as these, none of these questions need be resolved by us.
Appellants have referred to our recent decision in State v. D.R., 214 N.J. Super. 278 (App.Div. 1986), certif. granted 107 N.J. 104 (1987), as authority for the Appellate Division's declaring the existence of a parent-child testimonial disqualification or independent communication privilege. We discern a basic difference between the two cases. In State v. D.R. we recognized as a matter of common law the existence of a hearsay exception which aided the presentation of relevant and highly probative evidence, and thus advanced the search for the truth. Evid.R. 5 states:
The adoption of these rules shall not bar the growth and development of the law of evidence in accordance with fundamental principles to the end that the truth may be fairly ascertained.
Privileges, however, are generally legislative in origin and, although advancing other social values, they impede the presentation of evidence, and thus frustrate the search for the truth in a particular case. Since all evidence rules proceed from the general foundation that all relevant evidence is admissible, Evid.R. 7(f), privileges are not favored in the law and are sharply circumscribed. State v. Briley, 53 N.J. 498, 505-506 (1969). Our cases reveal that even recognized privileges often must yield to a stronger public interest. See State v. Dyal, 97 N.J. 229, 237 (1984); In the Matter of Myron Farber, 78 N.J. 259, 273-74, cert. den. sub nom. New York Times Co. v. New Jersey, 439 U.S. 997, 99 S.Ct. 598, 58 L.Ed.2d 670 (1978); State v. Phillips, 213 N.J. Super. 534, 545-546 (App.Div. 1986).
This is not to say that the Supreme Court is without power to recognize a common-law privilege. Prior to the recognition of the lawyer-client privilege in Evid.R. 26, and even prior to the broad rule-making powers of the Supreme Court embodied in N.J. Const. (1947), Art. VI, § II, par. 3, and N.J.S.A. 2A:84A-33 et seq., a common-law lawyer-client privilege was recognized by *231 the courts. See State v. Toscano, 13 N.J. 418, 424 (1953), where the court noted:
The attorney-client privilege is likewise firmly embedded in our common-law, although not embodied in either constitutional or statutory provision ... It is the oldest of the privileges for confidential communications and though its early origins involve consideration for the oath and honor of the attorney it is now universally recognized as resting upon the policy in favor of affording to the client freedom from apprehension in consulting his legal adviser.
See also Anderson v. Searles, 93 N.J.L. 227, 228-229 (E. & A. 1919).
Yet the recognition of a privilege not so firmly embodied in common-law has usually been the subject of judicial restraint and deference to the Legislature. For example, the physician-patient privilege was rejected by the Supreme Court in Hague v. Williams, 37 N.J. 328 (1963), but later enacted by the Legislature in N.J.S.A. 2A:84A-22.1 et seq. The priest-penitent privilege was expanded by the Legislature in N.J.S.A. 2A:84A-23 (Evid.R. 29) beyond confessionals to include communications received by a clergyman as professional counselor and to include persons performing religious functions similar to those of the clergy, both of which were not recognized by the prior, repealed statute, N.J.S.A. 2A:81-9. See In re Murtha, 115 N.J. Super. 380, 384-387 (App.Div. 1971), certif. den. 59 N.J. 239 (1971) (recounting the history of that privilege); and see passim, the historical comments collected in the chapter on privileges in Rules of Evidence, Chapter V (1987). Out-of-state authority concurs. See, e.g., Three Juveniles v. Commonwealth, supra, 390 Mass. at 359-364, 455 N.E.2d at 1205-1208, where the court recognized its power to declare a parent-child privilege as a matter of common-law, but declined to do so. This court has most recently considered the question of a judicially-created privilege in Dixon v. Rutgers, 215 N.J. Super. 333 (App.Div. 1987). In the context of an academic freedom privilege asserted in a civil rights case, we stated:
Consideration of the creation of a new privilege must begin with the premise that `all privileges . .. are exceptional, and are therefor to be [discouraged].... The investigation of truth and the enforcement of testimonial duty demand the restriction, not the expansion, of these privileges.' 8 Wigmore, Evidence, *232 (McNaughton rev. ed. 1961) § 2192 at 70-73. See e.g., Fellerman v. Bradley, 99 N.J. 493, 502 (1985); State v. White, 195 N.J. Super. 457, 460 (Law Div. 1984); cf. Wylie v. Mills, 195 N.J. Super. 332, 337 (Law Div. 1985). As privileges do not further the ascertainment of truth but rather permit the concealment of relevant, reliable information, courts have been reluctant to expand or create new privileges in the absence of compelling reasons. In re Dinnan, 661 F.2d 426, 429-430 (5 Cir.1981), cert. den. 457 U.S. 1106 [102 S.Ct. 2904, 73 L.Ed.2d 1314] (1982). In addressing the issue of the judicial establishment of new privileges, the United States Supreme Court has stated that `exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth.' United States v. Nixon, 418 U.S. 683, 710 [94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039] (1974). See also, State v. White, 195 N.J.Super at 460. The exclusion of relevant evidence by the creation of a privilege is warranted only if the resulting public good transcends the normally predominant principle of utilizing all rational means for ascertaining truth. Trammel v. United States, 445 U.S. 40, 49 [100 S.Ct. 906, 912, 63 L.Ed.2d 186] (1980). While the authority of this court would encompass the formulation of a new privilege, see Hague v. Williams, 37 N.J. 328, 335 (1962), we are aware of the hostility on the part of the judiciary, in general, to recognize additional privileges. In re Dinnan, 661 F.2d at 430. [215 N.J. Super. 333, 337-38].
In short, we determine that the adoption of a privilege restricting the flow of evidence is a substantial policy decision uniquely within the competence of the Supreme Court or the Legislature[3]. Based upon our realization of the limited role of the Appellate Division in such policy matters, we decline to pass *233 upon the merits of the alleged parent-child privilege, reserving such a decision to the Supreme Court should it decide to consider the issue, and to the Legislature.
Affirmed.
NOTES
[1] In light of our disposition, we do not pass upon any question relating to the ability of counsel originally retained by the father, but paid by Adolph to represent the children with respect to the issue here discussed.
[2] See, e.g., Note, "Parent-Child Loyalty and Testimonial Privilege," 100 Harv.L. Rev. 910 (1987); Comment, "Parent-Child Testimonial Privilege: An Absolute Right or an Absolute Privilege?", 11 U.Dayton L.Rev. 709 (1986); Comment, "A Parent-Child Testimonial Privilege: Its Present Existence, Whether It Should Exist, and to What Extent," 13 Cap.U.L.Rev. 555 (1984); Kraft, "The Parent-Child Testimonial Privilege: Who's Minding the Kids?", 18 Fam.L.Q. 505 (1985); Note, "The Judicial Development of The Parent-Child Testimonial Privilege: Too Big for its Britches?", 26 Wm. & Mary L.Rev. 145 (1984); Comment, "Underprivileged Communications: The Rationale for a Parent-Child Testimonial Privilege," 36 S.L.J. 1175 (1983); Kandoian, "The Parent-Child Privilege and the Parent-Child Crime: Observations on State v. Delong and In re Agosto," 36 Me.L.Rev. 59 (1984); Note "Parent-Child Testimonial Privilege: Preserving and Protecting the Fundamental Right to Family Privacy," 52 Cinn.L.Rev. 901 (1983), Comment, "The Child-Parent Privilege: A Proposal," 47 Fordham L.Rev. 771 (1979); Stanton, "Child-Parent Privilege for Confidential Communications: An Examination and Proposal," 16 Fam.L.Q. 1 (1982); Note, "From the Mouths of Babes: Does the Constitutional Right of Privacy Mandate a Parent-Child Privilege?", 1978 B.Y.U.L.Rev. 1002 (1978); Coburn, "Child-Parent Communications: Spare the Privilege and Spoil the Child," 74 Dick.L.Rev. 599 (1970).
[3] We distinguish between the "absolute" testimonial privileges (subject only to a balancing if competing constitutional interests are present) claimed here and the common-law recognition of privileges within the field of civil discovery. As illustration, we observe that R. 4:10-2(a) encompasses qualified disclosure privileges beyond those enumerated in the Evidence Rules. See Pressler, Current N.J. Court Rules, Comment 3 to R. 4:10-2. See also Wylie v. Mills, 195 N.J. Super. 332, 337-340 (Law Div. 1984) (collecting cases). These are qualified privileges protecting disclosure in a particular case along the lines recognized by the Supreme Court in Garrow v. Elizabeth General Hospital & Dispensary, 79 N.J. 549, 568 (1979), and Raymond v. Cregar, 38 N.J. 472, 481; King v. Paterson, 49 N.J.L. 471, 422 (E. & A. 1887); cf. Bainhauer v. Manoukian, 215 N.J. Super. 9, 36-37 (App.Div. 1987). Such privileges require an examination of the nature of the communication, the presence or absence of an abuse of the privilege, Bainhauer, 215 N.J. Super. at 42-43, and a determination on an ad hoc basis of whether disclosure would foster or hinder the interests of justice in the particular case. And see attorney's work product "privilege" under R. 4:10-2(c).