569, 572 (Sup. Ct. 1939), aff'd o. b. 124 *N. J. L.* 133 (E. & A. 1940). [at 164–165]

Additionally, it is evident from the record that defendant's appeal was pending at the time *Morse* was decided. Thus, we should apply that the recognized concept of law that where a case is on direct review, defendant should be given the benefit of any changes in the case law which have occurred between the time of trial and the date of the appellate argument. See *e. g., Linkletter v. Walker,* 381 *U. S.* 618, 627, 85 *S. Ct.* 1731, 14 *L. Ed.* 2d 601 (1965), and *State v. Murphy,* 85 *N. J. Super.* 391 (App. Div. 1964), aff'd 45 *N. J.* 36 (1965).

Accordingly, the judgment of conviction is not disturbed but the matter is remanded for resentencing under *N. J. S. A.* 2A:111–15 consistent with the rationale of this and the *Morse* opinions.

ANNAMARIE HUIE *ET AL.*, PLAINTIFFS-RESPONDENTS, v. NEWCOMB HOSPITAL *ET AL.*, DEFENDANTS-APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued November 23, 1970—Decided December 7, 1970.

Before Judges SULLIVAN, COLLESTER and LABRECQUE.

*Mr. William G. Bischoff* argued the cause for appellant Miles E. Drake (*Messrs. Taylor, Bischoff, Williams & Martin,* attorneys).

*Mr. Marvin D. Perskie,* argued the cause for respondents (*Messrs. Perskie & Perskie,* attorneys).

PER CURIAM. Pursuant to leave granted, defendant Dr. Miles E. Drake appeals from an order requiring him to submit for examination by plaintiffs' attorney an article on retrolental fibroplasia previously prepared for publication by him.

The infant plaintiff, Annamarie Huie, was prematurely born on February 4, 1965. On the day after her birth she was transferred from the hospital in which she had been born to the Newcomb Hospital, Vineland, where she came under the care of Dr. Drake, a pediatric specialist. It is contended, among other things, that by reason of the negligent administration of oxygen Annamarie has been permanently blinded. The present suit seeks to recover for her injury and disability as well as her parents' expenses and loss of services.

During the course of extensive discovery Dr. Drake's deposition was taken. When questioned as to the medical treatises in the field of retrolental fibroplasia which he recognized as authoritative he replied, "There are no such things." He further testified:

Q. Doctor, are you familiar with the work on Premature Babies, Nursing Care and Management by Geddes?
A. I at least know of the existence of the book.
Q. It is an authoritative work in the field as of '66?
A. Sorry, Mr. Perskie, I told you in the beginning that as a practicing pediatrician I cannot accept any textbook as an authority.

He was then asked:

Q. Now, Doctor, have you ever prepared any papers or articles on retrolental fibroplasia?
A. Yes, I have prepared a paper.
Q. When?
A. Four years ago.
Q. This was after this case or before this case?
A. Well, I was in the process then of reviewing my prematuries.
Q. Did you in the course of preparing this paper then—
A. I was in the process of preparing a review of my premature infants. I was preparing it for the state medical journal.
Q. Was it ever published?

A. No. I have not sent it in. It was in the process of being prepared to send it in.

Q. What occasioned your doing this?

A. You mean changing the paper?

Q. No. How did you come about to prepare it? Why?

A. Because I had approximately 14 or 15 years of premature care in two community hospitals, and there isn't a great deal of literature in hospitals. I felt this would be advisable to do.

Thereafter plaintiffs applied to the court for an order directing that the article in question be produced for inspection by plaintiffs' attorney. The motion was granted.

■■ We are in general accord with the reasoning expressed in the oral opinion of Judge Repetto granting the motion. Discovery rules are to be liberally interpreted. *Rogotzki v. Schept,* 91 *N. J. Super.* 135, 146–147 (App. Div. 1966). The search for truth and justice is paramount. *Myers v. St. Francis Hospital,* 91 *N. J. Super.* 377, 385 (App. Div. 1966). The scope of discovery practice is set forth in *R.* 4:10–2, formerly *R. R.* 4:16–2, which permits inquiry as to any matter, not privileged, which is *relevant to the subject matter* involved in the pending action. See *Strecker v. Devine,* 11 *N. J. Super.* 272 (Law Div. 1951). *R.* 4:18–1 permits discovery and inspection of books, papers, etc., not privileged, which constitute or contain evidence relating to any of the matters within the scope of the examination permitted by *R.* 4:10–2. It is not ground for the exclusion of testimony that it will be inadmissible at the trial, if the testimony sought appears reasonably calculated to lead to the discovery of admissible evidence. *Greenberg v. Stanley,* 30 *N. J.* 485, 497 (1959).

■ *Myers v. St. Francis Hospital, supra,* is analogous and illustrative of the broad discovery permitted as to authoritative articles, books, or treatises, and supports the granting of the motion. As was stated by Judge Goldmann in *Myers,*

It would save much time in trial preparation if respective counsel knew in advance what texts they could use in cross-examining the opposing experts. It is a frustrating experience—one which we have

observed in a number of cases over the years—to have an expert witness not recognize, or refuse to recognize, treatise after treatise as authoritative. (91 *N. J. Super.* at 391)

Here the inference to be drawn from Dr. Drake's deposition is that there were no authoritative works which he recognized in the field of retrolental fibroplasia. The inspection of his paper might well lead to the discovery of articles, books or treatises which he did view as authoritative at the time the paper was prepared, thus (1) opening the door to impeaching his credibility in that regard, and (2) shortening cross-examination. Wholly aside, the article concerns the relation between the use of oxygen and retrolental fibroplasia, and represents the doctor's conclusions after review of his premature patients (one of whom was the infant plaintiff), matters which would be proper subjects of inquiry at the taking of the doctor's deposition. *Rogotzki v. Schepl, supra;* 27 *C. J. S. Discovery* § 32(1) at 93' (1959).

Affirmed.