The STATE, ex rel. CELEBREZZE, Attorney General, Appellee,

v.

CECOS INTERNATIONAL, INC. et al., Appellants.

[Cite as *State ex rel. Celebrezze, v. CECOS Internatl., Inc.* (1990), 66 Ohio App.3d 262.]

Court of Appeals of Ohio,
Clermont County.

No. CA90–01–003.

Decided March 19, 1990.

*Anthony J. Celebrezze, Jr.,* Attorney General, *Dominic J. Hanket, Christopher J. Costantini, Cheryl Roberto* and *Lauren C. Angell,* for appellee.

*Bricker & Eckler, James C. Monahan, Randolph C. Wisemen* and *Frank L. Merrill,* for appellants.

*Per Curiam.*

This cause came on to be heard upon a notice of appeal filed by defendants-appellants, CECOS International, Inc. and Browning Ferris Industries, Inc., based upon a discovery order issued by the Clermont County Court of Common Pleas. Although the trial court stated that its discovery ruling was a final appealable order, plaintiff-appellee, the state of Ohio, filed a motion to dismiss the appeal on the grounds that the trial court had merely issued an interlocutory order not subject to appellate review. For the reasons stated below, we grant the state's motion to dismiss.

In November 1988, the state filed an amended complaint against CECOS and related parties alleging that violations of various Ohio hazardous waste laws had occurred at CECOS's facilities in Williamsburg, Ohio. In preparation for trial, the state sought discovery of reports and other documents relating to internally generated performance evaluations by the defendant parties. The trial court granted the discovery motion, finding that "the issues in this case are [of] such great public importance that public policy dictates that there be full discovery." Using language from Civ.R. 54(B), the trial court indicated its belief that this discovery order was a final appealable order. CECOS then filed its notice of appeal in this court.

In its motion to dismiss, the state argues that the trial court did not issue a final appealable order because the discovery order did not fall into a category recognized in Ohio as an exception to the general rule that discovery orders are interlocutory. Opposing the motion to dismiss, CECOS argues that its internal audits should be protected by a self-evaluative privilege, which privilege would in turn supply an essential component of a final appealable order.

To determine whether a final appealable order was created by the trial court, we look to R.C. 2505.02. That statute provides, in part:

"An order affecting a substantial right in an action which in effect determines the action and prevents a judgment, an order affecting a substantial right made in a special proceeding or upon a summary application in an action after judgment, or an order vacating or setting aside a judgment and ordering a new trial is a final order which may be reviewed, affirmed, modified, or reversed, with or without retrial."

Under the facts before us, the trial court's order must have been "an order affecting a substantial right made in a special proceeding" in order to qualify as a final appealable order. Our analysis must therefore focus upon whether the trial court's order affected a substantial right. We then must consider whether a special proceeding took place in the court below. *Humphry v. Riverside Methodist Hosp.* (1986), 22 Ohio St.3d 94, 95–96, 22 OBR 129, 130–131, 488 N.E.2d 877, 878–879.

■ Where a party has a substantial right—such as a right to privacy, or a right to the confidence of another—the law provides a privilege to protect that right. See *Henneman v. Toledo* (1988), 35 Ohio St.3d 241, 242–243, 520 N.E.2d 207, 208–210. The facts in the case at bar do not entitle CECOS to one of the commonly recognized privileges in Ohio, such as attorney-client, work product, or physician-patient.

CECOS urges us to find that it has a privilege of self-critical analysis. In other words, CECOS seeks our adoption of a privilege for records created by a corporation or other entity with the sole purpose of self-analysis. CECOS argues that public policy favors such a privilege since it encourages candid introspection and improvement, as well as internal "whistle blowing," which ultimately affects the quality of performance of a company. According to CECOS, the self-evaluative privilege would have a positive environmental effect because it would encourage companies like itself to make changes in procedure and to frankly document mistakes without fear of prosecution by state and federal regulatory authorities. Thus, CECOS presents a public policy argument in favor of our finding such a privilege exists.

A finding by this court that CECOS possesses a privilege of self-evaluation would inevitably lead to a conclusion that a substantial right of CECOS is implicated in the discovery order by the trial court.

■ The discovery orders must also have been made in a special proceeding in order for a final appealable order to have been created. The test for determining whether a special proceeding is involved requires a balancing of the need for effective and prompt disposition of litigation against the necessity for immediate review because a post-judgment appeal is not practicable. *State v. Port Clinton Fisheries, Inc.* (1984), 12 Ohio St.3d 114, 116, 12 OBR

157, 159, 465 N.E.2d 865, 867–868. In that case, the court found that the delay caused by an appeal of a discovery order compelling disclosure of the identities of the state's confidential informants was outweighed by the damage which would be caused by only allowing an appeal after the informants had been revealed. *Id.* The court found that a special proceeding existed because the enforcement of the discovery order would result in "complete foreclosure of any meaningful review." *Id.*[1]

Ohio cases in which a special proceeding has been found to exist involve issues of privacy or confidentiality of a personal, not corporate, nature. See *Port Clinton Fisheries, supra,* at 115, 12 OBR at 158–159, 465 N.E.2d at 866–867 (protecting state informant identities in civil actions where state exercises police powers to protect a public trust); *Humphry, supra,* at 97, 22 OBR at 131–132, 488 N.E.2d at 879 (protecting identities of patients at a hospital on grounds of potential for irreparable damage); *Doe v. Univ. of Cincinnati* (1988), 42 Ohio App.3d 227, 229, 538 N.E.2d 419, 421–422 (protecting identities of blood donors carrying AIDS virus since right to privacy and confidentiality would be compromised).

■ The decision in *Port Clinton Fisheries, supra,* advocates a balancing test to determine whether a special proceeding has occurred. CECOS argues that the potential damage it would incur as a result of allowing discovery outweighs any delay caused by allowing its appeal from what is generally seen as an interlocutory order. However, CECOS appears mainly to fear prosecution by state regulatory authorities resulting from internal audit disclosure. As a corporation, CECOS has no right to privacy, *California Bankers Assn. v. Shultz* (1974), 416 U.S. 21, 65, 94 S.Ct. 1494, 1519, 39 L.Ed.2d 812, 842–843, and no Fifth Amendment privilege against self-incrimination, *Ohio Civil Rights Comm. v. Parklawn Manor* (1975), 41 Ohio St.2d 47, 49, 70 O.O.2d 148, 149, 322 N.E.2d 642, 643–644. Ultimately, this court must decide whether to extend to CECOS the privilege of self-critical analysis.[2]

The test for determining whether adoption of such privilege is appropriate involves consideration of the following criteria:

---

**1.** The analysis is similar to that utilized in Civ.R. 65, which provides for the granting of an injunction where a party seeking such an order shows that "immediate and irreparable injury, loss or damage will result to the applicant" unless such order is granted.

**2.** Our authority to do so is created by Evid.R. 501, which reads, in its entirety:
"The privilege of a witness, person, state or political subdivision thereof shall be governed by statute enacted by the General Assembly *or by principles of common law as interpreted by the courts of this state in the light of reason and experience.*" (Emphasis added.)

"* * * [F]irst, the information must result from a critical self-analysis undertaken by the party seeking protection; second, the public must have a strong interest in preserving the free flow of the type of information sought; finally, the information must be of the type whose flow would be curtailed if discovery were allowed." Note, The Privilege of Self–Critical Analysis (1983), 96 Harv.L.Rev. 1083, 1086.

It appears that CECOS in the case at bar could easily meet the first criterion: the information the state seeks to discover derives from CECOS's critical self-analysis.

The second criterion—that the public must have a strong interest in encouraging such analysis—is the more difficult question. The state has a strong interest in protecting its citizens from the dangers of hazardous waste, and in prosecuting those who violate laws designed to protect that interest. However, the company has an interest in self-regulation based upon a fear of prosecution and upon a desire for profit. The problem is a delicate one: would discovery of such internal audits protect or jeopardize the public interest? Essentially, discovery could create a "dual chilling effect" in that it may both discourage the company from investigating thoroughly (or at all) but also may discourage trouble shooters within the company from reporting problems. Note, *supra*, at 1091–1092.

The final criterion asks whether the information sought is of the type which would be curtailed if discovery were allowed. CECOS claims that the internal audits demanded by the state are of such a type, and that the subsequent "chilling effect" of their exposure would do irreparable harm to its company. Certainly, the label "internal audit" suggests that such information would be protected were this court to adopt the self-critical analysis privilege.

We cannot agree with CECOS that a self-evaluation privilege is merited under these facts. As the state points out, CECOS is engaged in a potentially dangerous operation. Recognizing this, the legislature has provided for heavy regulation of the hazardous waste industry, requiring, *inter alia*, disclosure of company records to state regulatory officials. R.C. 3734.07(C). In the presence of a clear legislative directive that the hazardous waste industry be subject to public scrutiny, we cannot adopt a privilege allowing CECOS to avoid discovery. A self-evaluation privilege would allow CECOS to skirt obligations created by law. We may not ignore legislative intent by finding such privilege is present in the case at bar.[3]

---

**3.** Moreover, we note that Ohio courts have apparently not adopted the idea of a self-evaluative privilege. Even if precedent existed for finding the existence of such privilege,

Because we determine that no substantial right was affected in a special proceeding in the trial court, we find no final appealable order has been entered. We thus grant the state's motion to dismiss the appeal by CECOS.

The assignment of error properly before this court having been ruled upon as heretofore set forth, it is the order of this court that the judgment or final order herein appealed from be, and the same hereby is, dismissed.

*Judgment accordingly.*

WILLIAM W. YOUNG, P.J., HENDRICKSON and KOEHLER, JJ., concur.

we believe the strong public interest in hazardous waste regulation would adequately distinguish the facts in the action currently before us.