262 N.J. Super. 191 (1992)
620 A.2d 462
CPC INTERNATIONAL, INC. AND BRODSON PROPERTIES, INC., PLAINTIFFS,
v.
HARTFORD ACCIDENT AND INDEMNITY COMPANY, ET AL., DEFENDANTS.
Superior Court of New Jersey, Law Division Bergen County.
Decided July 17, 1992.
*194 David L. Harris, for plaintiff-respondent (Lowenstein, Sandler, Kohl, Fisher, & Boylan, attorneys).
Stephen V. Gimiglianuo, for defendants-movants (Simpson Thacher, & Bartlett, attorneys).
MOSES, J.S.C.
CPC seeks coverage under more than 250 comprehensive general liability insurance policies for damages and defense costs that CPC has incurred, and will continue to incur, in connection with environmental cleanup of six toxic waste sites. The insurers have denied coverage.
In pursuit of discovery, defendants served their first set of document requests on the plaintiff in February, 1990. Approximately 98,000 documents have been produced to date, but five hundred and eighty-one documents have been withheld on the basis of a plaintiff's claim of "self-critical analysis" privilege.[1]
Defendant, Travelers Indemnity Company, filed this motion on behalf of itself and other defendants to determine the applicability of the doctrine of self-critical analysis to these documents.[2]
*195 Defendants contend that the doctrine of self-critical analysis does not apply to the withheld documents; (1) because the inspections and audits contained therein were conducted in the ordinary course of business; (2) because there is no public need for confidentiality regarding the documents; and (3) because the documents are absolutely necessary in order to determine coverage since the information contained therein cannot be obtained from other sources.
Plaintiff contends that the documents are covered by the privilege of self-critical analysis; (1) because the corporate documents are products of internal evaluations; (2) because confidentiality of these documents promotes internal availability of such information; and (3) because such evaluations would terminate in the future if the results were disclosed.
The doctrine of self-critical analysis has never been addressed by New Jersey courts in the context of an environmental case.
The concept of privilege, which allows a party to withhold otherwise relevant information from discovery, is a judicially created exception to the general discovery rule that all relevant evidence should be produced. See R. 4:10-2(a) "The doctrine of privilege is dynamic in nature, not static. A privilege develops when the public need for disclosure is outweighed by the public need for confidentiality of information." Wylie v. Mills, 195 N.J. Super. 332, 337, 478 A.2d 1273 (Law Div. 1984). Even though privileges "... are not lightly created nor expansively construed," United States v. Nixon, 418 U.S. 683, 710, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039, 1065 (1974), there are instances when protection of the public need for confidentiality must be acknowledged and developed. Wylie, 195 N.J. Super. at 337, 478 A.2d 1273. This "public need for confidentiality" must be weighed against the public policy which favors access to all information in the litigation process and thus restricts the *196 use of new privileges. See Dixon v. Rutgers, 110 N.J. 432, 446, 541 A.2d 1046 (1988) ("since privileges conceal the truth rather than advancing its ascertainment, courts have traditionally tended to restrict rather than create or expand them").
The judicially created privilege of self-critical analysis prevents disclosure of confidential, critical, evaluative and/or deliberative material whenever the public interest in confidentiality outweighs an individual's need for full discovery. Wylie, supra, 195 N.J.Super at 338, 478 A.2d 1273, citing Roberts v. National Detroit Corp., 87 F.R.D. 30 (E.D.Mich. 1980); See also, Gillman v. United States, 53 F.R.D. 316 (S.D.N.Y. 1971) (Note that all three cases stress that factual information should not be protected by this qualified privilege.)
The doctrine was first articulated in Bredice v. Doctors Hospital, Inc., 50 F.R.D. 249 (D.D.C. 1970), aff'd. on rehearing, 51 F.R.D. 187 (D.D.C. 1970), aff'd, 479 F.2d 920 (D.C.Cir 1973), a medical malpractice action. The court held that minutes and reports of a hospital staff meeting, held to review and analyze clinical work done in the hospital, should not be produced since the sole objective of the meeting was to improve available care and treatment of patients in the hospital. The court held that confidentiality is essential to effective functioning of these meetings, and if these discussions were discoverable such meetings would not take place. The court held that there is an "overwhelming public interest" in having staff meetings held on a confidential basis so that the flow of ideas can continue unimpeded. 50 F.R.D. at 251.
The first New Jersey case to address the application of the doctrine of self-critical analysis was Wylie v. Mills, supra, which involved discovery of corporate (PSE & G) accident reports in connection with an automobile accident in which an employee was injured. PSE & G asserted that the documents were protected from discovery by the attorney-client privilege, the work-product privilege and the self-critical analysis privilege. The court quickly disposed of the attorney-client and *197 work-product assertions, finding that the information at issue was not in the form of confidential communications between corporate employees and corporate counsel. 195 N.J. Super. at 336, 478 A.2d 1273, citing Upjohn Co. v. United States, 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981); see also, Reardon v. Marlayne, Inc., 83 N.J. 460, 416 A.2d 852 (1980).
However, the Wylie court found the self-critical analysis argument meritorious. The court relied on federal cases which acknowledged the existence of a qualified privilege of self-critical analysis, citing Bredice v. Doctors Hospital, Inc., supra, 50 F.R.D. at 249; Banks v. Lockheed-Georgia Co., 53 F.R.D. 283 (N.D.Ga. 1971); Rosario v. New York Times Co., 84 F.R.D. 626 (S.D.N.Y. 1979). The judge reasoned that the privilege "... prevented disclosure of confidential critical, evaluative and/or deliberative material whenever the public interest in confidentiality outweighs an individual's need for full discovery." Wylie, supra, 195 N.J. Super. at 338, 478 A.2d 1273. (cites omitted) The Wylie court emphasized the public policy of encouraging safety improvements in practice and procedure. If such improvements are to be made, the court must protect confidentiality because "... such confidentiality will encourage open and frank criticism." Id. at 339, 478 A.2d 1273.
The court then laid out three criteria for the application of the privilege of self-critical analysis:
(1) the information which is the subject of a production request must be the criticisms or evaluations or the product of an evaluation or critique conducted by the party opposing the production request;
(2) the "public need for confidentiality" of such analysis must be such that the unfettered internal availability of such information should be encouraged as a matter of public policy; and
(3) the analysis or evaluation must be of the character which would result in the termination of such self-evaluative inquiries or critical input in future situations if this information is subject to disclosure
Ibid.
If the party claiming the privilege of self-critical analysis has met these criteria, the movant must show that its interests *198 outweigh the need to apply the privilege. Wei v. Bodner, 127 F.R.D. 91, 101 (D.N.J. 1989).
Courts in other jurisdictions have discussed the doctrine of self-critical analysis in environmental cases. In State ex rel. Celebrezze v. CECOS Int'l, Inc., 66 Ohio App.3d 262, 583 N.E.2d 1118 (1990), defendant, operator of a hazardous waste facility, appealed a trial court ruling which required release of certain documents and reports related to internally generated performance evaluations. The trial court had decided that, "... the issues in this case are [of] such great public importance that public policy dictates that there be full discovery." Id., 583 N.E.2d at 1118-9. In deciding whether this ruling was a final appealable order, the Court of Appeals had to determine if a substantial right of the defendant was affected. Id. at 1119. Defendant conceded that it was not entitled to any commonly recognized privilege in Ohio, such as attorney-client or work-product, but urged the court to uphold the privilege of self-critical analysis. Ibid.
The court applied a three pronged test identical to that in Wylie in determining whether adoption of this privilege was appropriate. Id. at 1120. Defendant easily met the first criterion that the information the state sought to discover was derived from defendant's self-critical analysis. The second and third criteria posed a more difficult problem. The court inquired: would the discovery of such internal audits protect or jeopardize the public interest? Id. at 1120-21.
The court could not ignore the fact that defendant was engaged in a potentially dangerous operation and that the state has a strong interest in protecting its citizens from the dangers of hazardous waste. The court noted that the legislature provided for stringent regulation of the hazardous waste industry, requiring disclosure of company records to state regulatory officials. In the presence of a clear legislative directive that the hazardous waste industry be subject to public scrutiny, the court declined to find a self-evaluative privilege which would *199 allow defendant to avoid discovery and skirt obligations created by law. Id. at 1121.
In United States v. Dexter, 132 F.R.D. 8 (D.Conn. 1990), the United States District Court affirmed a magistrate's ruling that the doctrine of self-critical analysis did not have any place in an action brought by the government pursuant to the Clean Water Act. Id. at 10. The court reasoned that since the self-evaluative privilege is rooted in the promotion of the public interest, the court should take cognizance of and give deference to Congress's role in declaring what is in the public interest in an action brought by the United States to enforce duly enacted laws. Id. at 9. The Dexter court noted that Congress had explicitly decided that no hazardous substances should be discharged into the waters of the United States. The application of the doctrine of self-critical analysis would impede the Administrator of the Environmental Protection Agency from enforcing the Clean Water Act and would be contrary to public policy. Id. at 9-10.
See also Artesian Water Company v. New Castle County, No. C.A. 5106, 1981 WL 15606 (Del. Ch. 1981)[3], where the plaintiff Water Company sought damages and injunctive relief against defendants, New Castle County and others. Defendants had received a grant from the United States Environmental Protection Agency to finance a round table conference in the hopes that the participating experts would recommend a solution to alleviate the pollution which was the subject of the pending litigation. Plaintiff filed a motion for the production of all documents, recordings and recommendations arising from the conference. The Delaware Chancery Court rejected defendants' argument because such a privilege had never been recognized in Delaware.
The court added that even if such a privilege existed it would decline to apply it. The court distinguished the prior cases *200 which recognized and applied the doctrine of self-critical analysis, saying that those involved the production of documents arising out of confidential peer reviews or internal investigations. The plaintiff in Artesian sought to inspect information developed during a federally funded conference, conducted by a diverse group of experts. The court recognized that plaintiff's need for the data would outweigh any claim of privilege because the documents sought were germane to the very issue before the court. Without access it would be virtually impossible for the plaintiff to proceed with a claim for injunctive relief.
In the instant action, the plaintiff is a private corporation and the defendants are numerous private insurance companies. The government is not involved. Certain relevant facts are not in dispute:
(1) CPC purchased some or all of the policies in NJ.
(2) Six of forty-one insurers have a principal place of business in NJ.
(3) CPC, a multi-national corporation, has its headquarters in NJ.
(4) Four of the six sites in issue are in NJ and two are in Illinois.
(5) These CPC sites were/are involved in chemical products processes, subsequently dispelling waste.
(6) CPC's activities must comply with environmental laws and regulations and must attempt to prevent pollution. See Water Pollution Control Act, N.J.S.A. 58:10A-1 et seq.; Solid Waste Management Act, N.J.S.A. 13:1E-1 et seq.; Spill Compensation and Control Act, N.J.S.A. 58:10-23.11 et seq.; Comprehensive Environmental Response, Compensation and Liability Act of 1980, 42 U.S.C. § 9601 et seq.

(7) CPC concedes that there have been "accidents" at CPC sites.
The documents sought, as described by CPC in its "Privilege Logs," are:
 internal memoranda on insurance
 internal memoranda on meetings with the DEPE
 internal memoranda on sale of the sites
 reviews of consultant's work proposals
 notes/memoranda describing conditions at the sites
 notes regarding testing at the sites
This Court has applied the Wylie three pronged test to the facts here. The first prong requires a showing that the subject of the production request is a self-criticism or evaluation. *201 Based on the descriptions provided in CPC's "privilege logs," the majority of the documents sought appear, on their face, to be criticisms and/or evaluations conducted by CPC. For the purposes of this discussion, the court will assume that the documents contain criticisms and/or self-evaluations. Therefore, the first prong of the Wylie test has been met by CPC.
The second prong requires a showing of a public need for confidentiality which outweighs the public need for disclosure. Wylie, supra, 195 N.J. Super. at 337, 478 A.2d 1273. In Celebrezze, supra, the court weighed the state's interests in protecting its citizens from the dangers of hazardous waste and in prosecuting those who violate laws designed to protect that interest, against the company's interest in self-regulation, based upon a fear of prosecution and a desire for profit. 583 N.E.2d at 1120. The court held that discovery of such internal audits protects, not jeopardizes, the public interest since the company was engaged in a potentially dangerous venture and operated in a heavily regulated area. A self-evaluation privilege would allow the company to skirt obligations created by law. Id. at 1121.
As in Celebrezze, this court cannot ignore the clear direction of the New Jersey Legislature and condone the use of a privilege which would be contrary to both the legislative intent in enacting environmental regulations and the liberal discovery policy which exists in this state. See R. 4:10-2(a); In re Selser, 15 N.J. 393, 405, 105 A.2d 395 (1954).
The strong public interest in environmental regulation adequately distinguishes the facts of this case from Wylie. The Wylie court recognized the doctrine of self-critical analysis to shield corporate documents resulting from an internal investigation of a corporate employee's injuries received in an automobile accident. However, this case involves pollution, not personal injury. As in Celebrezze and Dexter, the emphasis must be on the existence of strong environmental legislation as evidence of the compelling interest the public has in its regulation. *202 The two courts did not rely solely on the government's participation in these cases as the basis denying the privilege. See Celebrezze, 583 N.E.2d at 1121 ("[I]n the presence of a clear legislative directive that the ... industry be subject to public scrutiny, we cannot adopt a privilege allowing CECOS to avoid discovery."); Dexter, 132 F.R.D. at 9-10 ("[T]he legislature has the power to decide what the policy of the law shall be, and if it has intimated its will, however indirectly, that will should be recognized and obeyed.... Application of the self-critical privilege would effectively impede the (government's) ability to enforce the Clean Water Act, and would be contrary to stated public policy.") (emphasis added). The public interest in preventing and remediating environmental pollution weighs heavily in favor of disclosure, even when the government is not a party. Cf., Wei v. Bodner, supra, 127 F.R.D. at 101 (In an action between private parties the court refused to apply the doctrine of self-critical analysis because of the overwhelming public interest protected by the Sherman Act.) Accordingly, this Court finds that the public need for disclosure of documents relating to environmental pollution and the circumstances of such pollution outweighs the public's need for confidentiality in such documents. CPC has not satisfied the second prong.
The third prong requires a showing that such evaluations would cease as a result of the disclosure. Plaintiff's descriptions of the documents withheld show that many have been prepared in compliance with environmental regulations. CPC insists that its internal environmental audits go beyond the scope contemplated by government regulatory agencies and that disclosure of such information would have a chilling effect on future evaluations and run counter to the public interest in encouraging self-critical evaluations.
There is no support in the record for CPC's claim that its environmental audits actually exceed the legislative requirements. CPC is obliged to comply with the regulations and is subject to fines and other penalties if it fails to do so. In *203 addition to meeting regulatory requirements, it surely would be good business practice that CPC continue to evaluate its pollution problems, regardless of disclosure. The third prong has not been met. Thus, application of the Wylie test to the instant facts results in a conclusion that the doctrine of self-critical analysis is inapplicable.
In the alternative, defendants argue that even if the court found the Wylie criteria satisfied and held the documents privileged, their need for the data would outweigh any claim of privilege and would require disclosure of the documents. Wei, supra, 127 F.R.D. at 101. CPC has sought millions of dollars in coverage for environmental clean-up costs resulting from years of alleged polluting activities. They are in a superior, if not exclusive, position to ascertain the facts surrounding the alleged pollution because the incidents at issue occurred on premises within CPC's control and were investigated by CPC employees. This creates a situation of inequality between the parties. Cf., Werkheiser v. Warren, 142 N.J. Super. 405, 361 A.2d 603 (Law Div. 1976) (Where the accident occurred on the defendant's property, the witnesses were employees of defendant, and the plaintiff could not receive the documents from any other source, the court refused to apply the work-product privilege to fact witness statements). Without access to the documents which defendants seek to inspect, it would be virtually impossible for the insurance companies to determine whether or not to provide coverage. See Artesian, supra, No. C.A. 5106 at 4.
The defendants also claim that the documents withheld are likely to be among the most important documents in this litigation, as it is essential for them to determine whether the pollution was "knowing and intentional" in order to decide whether to provide coverage. Diamond Shamrock Chemicals Co. v. Aetna Casualty and Surety Co., 258 N.J. Super. 167, 210-215, 609 A.2d 440 (App.Div. 1992). Evidence necessary to *204 the determination of whether the pollution was intentional and knowing cannot be shielded.
This argument is consistent with the spirit of New Jersey discovery rules which are disposed to granting discovery in order to accomplish full disclosure of fact, to eliminate surprise, and to promote settlement. Werkheiser, supra, 142 N.J. Super. at 407, 361 A.2d 603. As such, the documents would be made available to the defendants on this alternative theory even if the privilege of self critical analysis was applicable.
Defendants will submit an order.
NOTES
[1] 269 documents were withheld solely based on this privilege; 240 were withheld based on the doctrine of self-critical analysis and the attorney-client privilege, 41 on the basis of self-critical analysis and work-product privilege and 37 on the basis of self-critical analysis, attorney-client and work-product privileges.
[2] The movants are: Fireman's Fund Insurance Company; Aetna Casualty & Surety Insurance Company; Commercial Union Insurance Company; Home Insurance Company; City Insurance Company; United National Insurance Company; Puritan Insurance Company; AIU Insurance Company; Allianz Versicherungs-AG; Allstate Insurance Company, as successor-in-interest to Northbrook Excess and Surplus Insurance Company; Birmingham Fire Insurance Company of Pennsylvania; Granite State Insurance Company; Harbor Insurance Company; Hartford Accident & Indemnity Company; Highlands Insurance Company; Insurance Company of North America; Insurance Company of the State of Pennsylvania; International Insurance Company; National Union Fire Insurance Company of Pittsburgh; North River Insurance Company; Old Republic Insurance Company; and Republic Insurance Company.
[3] Unpublished opinion cited in accordance with R. 1:36-3.