266 N.J. Super. 549 (1993)
630 A.2d 342
CHARLES E. KOROSTYNSKI, PLAINTIFF-RESPONDENT,
v.
STATE OF NEW JERSEY, DIVISION OF GAMING ENFORCEMENT, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted June 8, 1993.
Decided July 29, 1993.
*550 Before Judges MICHELS and BILDER.
Robert J. Del Tufo, Attorney General of New Jersey, attorney for appellant State of New Jersey, Division of Gaming Enforcement (Mary C. Jacobson, Assistant Attorney General, of counsel; Carol Johnston, Deputy Attorney General, on the brief).
Brown & Connery, attorneys for respondent Charles E. Korostynski (William M. Tambussi, of counsel and on the brief).
The opinion of the court was delivered by MICHELS, P.J.A.D.
We granted the State of New Jersey, Division of Gaming Enforcement (Division) leave to appeal from an order of the Law Division that compelled it to produce all personnel files and *551 internal investigation records requested by plaintiff Charles E. Korostynski in this wrongful termination of employment action.
Plaintiff was initially employed as a State Trooper, but in or around August of 1981 he began to do undercover work with the Division. By June of 1982, plaintiff had commenced full-time employment with the Division as a State Investigator. Over the course of his employment with the Division, plaintiff received several commendations for the work that he had done. However, in August of 1988, an event took place which caused the Division to conduct an internal investigation of plaintiff. The Division's investigation centered on plaintiff's motivation for conducting his own investigation of a casino employee regarding that employee's alleged drug use. The issue of plaintiff's motivation for his investigation is seriously in dispute. Plaintiff maintains that he was simply performing his sworn duty to uphold the laws of New Jersey by conducting the investigation. Specifically, he asserts that he received information, during the course of his employment, which indicated that there was drug use and dealing taking place in an Atlantic City casino. Having received such information, plaintiff claims that he proceeded to conduct a preliminary interview of the suspect, Dawn Richards, during his lunch hour, for the sole purpose of obtaining sufficient information to furnish a report to the drug enforcement unit of the Division.
The Division, on the other hand, contends that plaintiff had conducted his investigation of Ms. Richards purely for personal reasons and harassment purposes. Particularly, the Division indicates that personal relationships, and not a concern for upholding the law, had motivated plaintiff's investigation. Apparently, Ms. Richards had been sharing an apartment with a man, and had been asked to move out by that man. Before she could locate other living arrangements, it is alleged that the man's mother, who had moved into the apartment that Ms. Richards had been asked to leave, had threatened Ms. Richards by telling her that she knew an agent with the Division who could jeopardize her gaming license. As it turns out, the woman who had allegedly made this *552 threat was then romantically involved with plaintiff, and in fact, had been dating plaintiff for seven or eight years. Shortly thereafter, plaintiff embarked on his investigation of Ms. Richards.
Following plaintiff's investigation of Ms. Richards, her casino's legal counsel filed a complaint with the Division. As a result of this complaint, the Division commenced an internal investigation of plaintiff regarding allegations that charged him with misconduct while acting in his official capacity as an agent of the Division. Plaintiff was interviewed by William J. McElroy, Chief Administrator of Operations of the Division, and, Richard E. Handzo, a Supervisor of the Casino Licensing Section of the Division. At the conclusion of the Division's internal investigation, plaintiff was terminated from his employment.
As a result of his termination, plaintiff instituted this action against the Division. He charges that he was wrongfully terminated from his employment with the Division (1) as a result of an internal investigation which wrongfully, maliciously, and without foundation accused him of misconduct in the performance of his duties; (2) in breach of his employment agreement; and (3) in violation of public policy. During the pretrial discovery period, plaintiff was furnished with his own personnel files and internal investigation records. In addition to these materials, plaintiff also requested production of (1) the names and personnel files of each and every person who had held the position of State Investigator and who had had his or her employment with the Division cease during the period of 1985 through 1990, and (2) the complete files and records of all internal investigations of each employee of the Division who had held the position of State Investigator during that same time frame. Ultimately, the Division produced a list of the names of its relevant former employees, and a brief description of the circumstances surrounding each of their departures. However, the Division refused to produce the personnel and investigative files of these former employees. Plaintiff thereupon moved to compel production of said items. The trial court granted plaintiff's motion in this regard, but ordered that access to these *553 materials was to be limited "to the parties to this action, their experts and their attorneys, for use in this matter only." We granted the Division leave to appeal from this order.
The sole issue raised on this appeal is whether the trial court properly compelled the disclosure of the personnel and internal investigation records of former employees other than plaintiff. The Division argues that these materials are not discoverable because they are irrelevant, privileged and confidential. We agree and reverse.
R. 4:10-2, which governs the rights of litigants with respect to discovery, in pertinent part provides:
Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:
(a) In General. Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence; nor is it ground for objection that the examining party has knowledge of the matters as to which discovery is sought.
In interpreting R. 4:10-2, we have previously explained that:
[O]ur courts have held that rules of discovery are to be liberally construed and accorded the broadest possible latitude. Blumberg v. Dornbusch, 139 N.J. Super. 433, 437-438[, 354 A.2d 351] (App.Div. 1976). Such liberal construction allows the court to compel a party to produce all relevant, unprivileged information which may lead to the discovery of relevant evidence concerning the respective positions of both plaintiff and defendant. Huie v. Newcomb Hospital, 112 N.J. Super. 429, 432[, 271 A.2d 607] (App.Div. 1970); Rogotzki v. Schept, 91 N.J. Super. 135, 146[, 219 A.2d 426] (App.Div. 1966); Van Langen v. Chadwick, 173 N.J. Super. 517, 524-525[, 414 A.2d 618] (Law Div. 1980) (citing R. 4:10-2(a)). [Shanley & Fisher, P.C. v. Sisselman, 215 N.J. Super. 200, 216, 521 A.2d 872 (App.Div. 1987)].
While it is clear that R. 4:10-2 envisions a broad and liberal discovery process, the express terms of that rule, and the cases which have interpreted it, still require that the material sought to be discovered must be relevant and not privileged. See Shanley & Fisher, P.C. v. Sisselman, supra, 215 N.J. Super. at 216, 521 A.2d *554 872. In this case, these minimum requirements have not been met.
Here, the trial court relied upon the recent New Jersey Supreme Court case of Dixon v. Rutgers, The State University of N.J., 110 N.J. 432, 541 A.2d 1046 (1988), in granting plaintiff's discovery request. However, careful analysis of Dixon reveals that it is readily distinguishable from this matter, and thus does not support the broad discovery order entered against the Division. While Dixon permitted discovery of Rutgers' tenure-related peer review materials over privilege and privacy claims, the Supreme Court repeatedly emphasized the fact that the case's status as an anti-discrimination suit was central to its holding. See id. at 435; 451; 453; 454, 541 A.2d 1046. In fact, the Court expressly indicated that "[t]he eradication of "`the cancer of discrimination'" has long been one of our State's highest priorities." Id. at 451, 541 A.2d 1046 (citation omitted). Thereafter, the Court concluded that:
While we are mindful of the need to maintain the confidential nature of the peer review system, we believe that adoption of the qualified academic freedom privilege would interfere significantly with the enforcement of our anti-discrimination laws.

[Id. at 453, 541 A.2d 1046].
Thus, it seems quite clear that the broad discovery permitted in Dixon was tied tightly to the fact that it was an anti-discrimination suit. This position is further reinforced when it is noted that our Supreme Court has declined to take such a broad discovery stance in other contexts. For example, in Nero v. Hyland, 76 N.J. 213, 386 A.2d 846 (1978), the Court held that the public interest in maintaining confidentiality relating to the executive function of making appointments to public office outweighed the interest that plaintiff, a prospective government appointee who had been subjected to a character investigation, had in the disclosure of the materials gathered in that investigation. Id. at 226, 386 A.2d 846. This disparity of results can best be explained by the fact that "[t]he doctrine of `privileges' is dynamic in nature[,] not static." Wylie v. Mills, 195 N.J. Super. 332, 337, 478 A.2d 1273 (Law *555 Div. 1984). In light of this dynamic character, it is clear that an across-the-board provision which either favors or disfavors discovery without reference to the nature and facts of a particular case is inappropriate. Instead, what is required is a standard which mandates the individual evaluation of each distinct case. Such a standard has been set down by our Supreme Court in McClain v. College Hosp., 99 N.J. 346, 351, 492 A.2d 991 (1985), and should have been applied in this case. However, to even get to the balancing of a litigant's particularized need against the public interest in confidentiality which McClain requires, a finding that the material sought is relevant must be made. In this case, the material sought is irrelevant.
Evid.R. 1(2) defines "relevant evidence" as "evidence having any tendency in reason to prove any material fact." Material facts are those that have some bearing on the claims being advanced. See Biunno, Current N.J.Rules of Evidence, comment 2 on Evid.R. 1(2) (1993). Here, these claims, as noted above, are that plaintiff was wrongfully terminated (1) as a result of an improper internal investigation; (2) in breach of his employment agreement; and (3) in violation of public policy. In seeking to prove these claims, plaintiff has requested the personnel files and internal investigation records of all other similarly situated former employees of the Division who have ceased to be employed there during the period from 1985 to 1990. In the final analysis, plaintiff is claiming that he was wrongfully terminated for performing his sworn duties. The files regarding other former employees are not of any relevance whatsoever to such a claim. Either plaintiff was wrongfully terminated or he was not; the records of other former employees are entirely immaterial to the resolution of this issue.
Additionally, plaintiff's reliance on Woolley v. Hoffmann-La Roche, Inc., 99 N.J. 284, 491 A.2d 1257, modified, 101 N.J. 10, 499 A.2d 515 (1985), and its progeny, in support of his discovery request, is misplaced. In Woolley, our Supreme Court held that:

*556 [A]bsent a clear and prominent disclaimer, an implied promise contained in an employment manual that an employee will be fired only for cause may be enforceable against an employer even when the employment is for an indefinite term and would otherwise be terminable at will. [Id. at 285-86, 491 A.2d 1257].
Subsequently, in Shebar v. Sanyo Business Systems, 218 N.J. Super. 111, 120, 526 A.2d 1144 (App.Div. 1987), aff'd, 111 N.J. 276, 544 A.2d 377 (1988) and Gilbert v. Durand Glass Mfg. Co., Inc., 258 N.J. Super. 320, 330, 609 A.2d 517 (App.Div. 1992), we extended Woolley's holding to encompass oral as well as written promises made by an employer. In Gilbert, supra, it was specifically noted that in order for an employee to state a claim for an employer's violation of its oral or written policy on termination:
It is enough that the employee reasonably believes that a particular personnel policy has been established and is applied consistently and uniformly to each employee. Also, the enforceability of such a provision must be construed in accordance with "the reasonable expectations of the employees." Woolley, 99 N.J. at 298, 491 A.2d 1257. [258 N.J. Super. at 330, 609 A.2d 517 (emphasis added)].
In this matter, plaintiff's reasonable expectations regarding termination arise solely from the Division's Policies and Procedures Manual. He offers no other basis for his expectation that he would only be fired for cause, or that his internal investigation would proceed in a particular manner. Thus, his claims should be evaluated against the relevant provisions of the Division's manual. Either the policies and procedures described therein were followed or they were not. The treatment of other former employees is of absolutely no relevance to plaintiff's claims, and therefore, is not properly discoverable.
Beyond this, even assuming that the requested material could somehow be considered relevant, the Division advances strong privilege and confidentiality arguments which militate against its discoverability. As noted earlier, R. 4:10-2(a) expressly exempts privileged material from the scope of discovery. In commenting on the general nature of privilege, it had been recently noted by the Law Division that:
The concept of privilege, which allows a party to withhold otherwise relevant information from discovery, is a judicially created exception to the general discovery rule that all relevant evidence should be produced. See R. 4:10-2(a). "The *557 doctrine of privilege is dynamic in nature, not static. A privilege develops when the public need for disclosure is outweighed by the public need for confidentiality of information." Wylie v. Mills, 195 N.J. Super. 332, 337, 478 A.2d 1273 (Law Div. 1984). Even though privileges "... are not lightly created nor expansively construed," United States v. Nixon, 418 U.S. 683, 710, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039, 1065 (1974), there are instances when protection of the public need for confidentiality must be acknowledged and developed. Wylie, 195 N.J. Super. at 337, 478 A.2d 1273. [CPC Intern. v. Hartford Acc., 262 N.J. Super. 191, 195, 620 A.2d 462 (Law Div. 1992)].
The particular privilege which the Division seeks to invoke in this case has come to be known as the "self-critical analysis" privilege. See CPC Intern., supra, 262 N.J. Super. at 196, 620 A.2d 462; Bundy v. Sinopoli, 243 N.J. Super. 563, 570, 580 A.2d 1101 (Law Div. 1990); Wylie v. Mills, supra, 195 N.J. Super. at 337, 478 A.2d 1273. This privilege "prevents disclosure of confidential critical, evaluative and/or deliberative material whenever the public interest in confidentiality outweighs an individual's need for full discovery." Wylie v. Mills, supra, 195 N.J. Super. at 338, 478 A.2d 1273. The primary justification for this privilege is the encouragement of candor and frankness toward the ends of discovering the reasons for past problems and preventing future problems. See Bundy v. Sinopoli, supra, 243 N.J. Super. at 572, 580 A.2d 1101; Wylie v. Mills, supra, 195 N.J. Super. at 339-40, 478 A.2d 1273. Clearly, such concerns are relevant to the Division regarding its performance of internal investigations. It cannot be seriously disputed that candor and assurances of confidentiality are of paramount concern when seeking to uncover the truth in such an investigation, and thereby improve the operations of the Division. Furthermore, under the circumstances present here, it seems clear that the public interest in confidentiality significantly outweighs plaintiff's need for full discovery of the requested material. Indeed, as noted above, plaintiff's need for this material is minimal at best, since it is wholly unrelated to his particular claims. Contrarily, the public interest in confidentiality, and the successful prevention of the type of conduct which plaintiff allegedly committed, is substantial. Therefore, discovery of the requested materials clearly cannot be justified on this basis.
*558 Finally, we are satisfied that the material sought by plaintiff is also not discoverable due to its confidential nature. Our Supreme Court has expressly set forth a standard which governs in civil matters, such as this one, where disclosure of confidential investigative records is sought. See McClain v. College Hosp., supra. It is under this standard that the trial court should have evaluated plaintiff's discovery request; not the standard set forth in Dixon, supra, which is limited to the context of anti-discrimination suits. Under the appropriate standard, there can be little question that plaintiff is not entitled to discover the materials that he has requested.
McClain was a wrongful death action which contained allegations of medical malpractice. Plaintiff therein sought the release of documents which had been compiled by the State Board of Medical Examiners during its investigation of the care which had been provided to the deceased at College Hospital. In evaluating the plaintiff's request, the Court noted that:
[D]isclosure of the materials involved in an internal investigation into health care service invokes serious and important questions of public policy deserving careful consideration by the courts. An applicant seeking the opinions, conclusions, sources of information and investigative techniques of the agency should demonstrate a need more compelling than the agency's recognized interest in confidentiality. [McClain, supra, 99 N.J. at 359, 492 A.2d 991].
Having acknowledged these weighty concerns, the Court then announced that:
[T]he standard that shall govern the disclosure, for use in civil proceedings, of confidential investigative records relating to a licensing board's inquiry into a professional's acts ... is a showing of particularized need that outweighs the public interest in confidentiality of the investigative proceedings, taking into account (1) the extent to which the information may be available from other sources, (2) the degree of harm that the litigant will suffer from its unavailability, and (3) the possible prejudice to the agency's investigation. [Id. at 351, 492 A.2d 991].
Under this standard, plaintiff's discovery request must necessarily be denied. Plaintiff is unable to even demonstrate a particularized need for the materials that he has requested, much less a particularized need which outweighs the public interest in the confidentiality of said materials. While the requested materials may in fact be unavailable from sources other than the *559 Division, plaintiff's actual need for them is minimal at best, since they are entirely unrelated to the claims that he is advancing. As noted earlier, plaintiff is only charging that he was wrongfully terminated from his employment with the Division. Thus, the personnel files and internal investigation records regarding other former employees are wholly immaterial to his case, and therefore, plaintiff will suffer absolutely no harm as a result of their unavailability. In essence, plaintiff's discovery request amounts to little more than a fishing expedition. This is particularly objectionable here due to both the Division's and the public's clear interest in maintaining the confidentiality of such matters. Certainly, the potential prejudice to the Division under such circumstances is significant. To allow the requested materials to be so easily discovered, without a strong showing of necessity, would unquestionably serve to inhibit the candor of those participating in such investigations, and thereby impede the effectiveness of, and possibly even discourage the existence of, internal investigation programs. These are not results that we are willing to sanction. Consequently, we hold to the view that the trial court erred in ordering the Division to disclose the personnel files and internal investigation records requested by plaintiff.[1]
Accordingly, the pretrial discovery order of the Law Division under review is reversed.
NOTES
[1] Even if the requested material had been discoverable, it would have been incumbent upon the trial court to review that material in camera prior to it being turned over to plaintiff in order to ensure the removal of any items personal to the other former employees and irrelevant to the issues in dispute between these parties.